# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MARK DARNELL BOOKER,

       Defendant-Appellant.

UNPUBLISHED
April 11, 2017

No.  326570
Ingham Circuit Court
LC No.  13-000945-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v

MARK DARNELL BOOKER,

       Defendant-Appellee.

No.  332975
Ingham Circuit Court
LC No.  13-000945-FH

---

Before:  BORRELLO, P.J., and WILDER and SWARTZLE, JJ.

PER CURIAM.

In Docket No. 326570, defendant, Mark Darnell Booker, appeals as of right from his jury trial convictions of resisting arrest, MCL 750.81d(1), possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), and possession with intent to deliver 50 grams or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*).  In Docket No. 332975, the prosecution appeals by leave granted[1] the trial court's subsequent order granting defendant a new trial.  In Docket No. 326570, we affirm defendant's convictions and sentences.  In Docket No. 332975, we reverse the trial court's decision and order granting defendant a new trial.

---

[1] *People v Mark Darnell Booker*, unpublished order of the Court of Appeals, entered September 12, 2016 (Docket No. 332975).

## I. FACTUAL BACKGROUND

This case arises out of narcotics surveillance in a high-crime area of Lansing, which led to defendant's traffic stop on suspicion that he had been involved in a drug sale. On an evening in October 2012, Officer Ryan Smith of the Lansing Police Department (LPD) was assisting the LPD's "special operation section" (SOS), which is an undercover narcotic unit. The SOS was conducting narcotic surveillance at an apartment complex (the apartment complex) on the basis of several anonymous complaints that they had received regarding drug activity in the area. Officer Smith was clothed in full uniform and was patrolling in a marked police car. Also working for the LPD that evening in the same capacity was Officer Bradley Hough.

While surveilling the apartment complex, an undercover SOS officer observed "an older model pickup truck" approach and park on the street near the apartment complex. Nothing about the pickup truck initially aroused the officer's suspicion, but several minutes later "a dark colored SUV arrived and pulled out in front of the pickup truck." A passenger in the pickup truck exited the truck, entered the SUV, and the SUV drove away. Several minutes later, the SUV returned to again park in front of the pickup truck, and the original truck passenger exited the SUV and reentered the pickup truck, which then drove away. This pattern of conduct was one that, through experience and observation of "numerous" drug deals involving confidential informants, the SOS officer recognized as a technique used to avoid police surveillance.. Thus, the SOS officer requested that marked units be dispatched to stop the SUV.

Officers Smith and Hough were ordered to make an investigatory stop of the SUV, which turned out to be defendant's vehicle. After stopping defendant, who was the vehicle's sole occupant, Smith and Hough approached the vehicle, which had a tinted rear window. When asked "where he was coming from," defendant replied that he had been "dropping his girl off" at the apartment complex. The officers retrieved defendant's driver's license, certificate of insurance, and the vehicle's registration, then returned to their patrol cars to "run" that information. As Smith did so, Hough continued to focus his concentration on defendant, using a flashlight and the patrol cars' spotlights to help him observe inside defendant's vehicle. Hough described what he saw as follows:

> . . . I can see his silhouette from the rear. I can see his head, his right shoulder, and then the rest was blocked by the seat itself.
>
> I could see that his right arm and shoulder were moving and appeared to be manipulating something in the center portion of the vehicle, but what made me suspicious of that is he didn't turn his head, he didn't turn his torso to see what he was doing. I've done hundreds of traffic stops. I've had lots of people try -- you know, they can't find their insurance so they continue to look for it or they're putting away something. When that occurs, anybody . . . [is] going to look to see exactly what they're doing. They're going to look to see whatever they're trying to manipulate.
>
> That wasn't taking place. What I saw was him almost looking straight ahead, at least from my vantage point it looked like, and I could see this arm

-2-

moving and kind of touching something in the area behind him or directly in the center section.

Hough informed Smith of the movement Hough had observed.

Both officers considered defendant's movement within the vehicle to be a "furtive gesture." Officer Smith explained that phrase as follows:

Furtive gesture is an unnatural movement. For example, if I stopped any one of you today, after I obtain your information, there's no reason for you to be moving around in the car. If you start moving around in the car . . . as police officers we feel that, okay, you're either hiding something or getting a weapon, something you shouldn't have. Basically it's a movement that there's no reason to be making.

Given the fact that defendant was leaving a high-crime area, the suspicion that he might have been involved in a drug transaction, and the knowledge that participants in drug transactions are often armed, Officer Smith perceived defendant's furtive gesture as "a major safety issue" for the officers. Accordingly, Smith decided to order defendant to exit the vehicle.

Officer Smith opened the front driver's-side door of defendant's vehicle and instructed defendant to exit several times. Defendant refused to do so, continuing to refuse after he was warned that he could be arrested for refusing to comply with the officers' orders. In response, Smith informed defendant that he was under arrest and grabbed defendant's left arm. Defendant wrenched that arm away from Smith "and simultaneously with his right hand . . . reached into the waistband front pocket area of [defendant's] shirt." Fearful that defendant was reaching for a concealed weapon, Smith entered the vehicle and "forced [defendant] backwards into his seat," seizing defendant's right arm and pulling it into open view. Coming to Smith's aid, Officer Hough ran around the vehicle and entered through the front passenger's-side door. As defendant's right hand became visible, Smith saw that defendant had not grabbed a weapon. But defendant continued to struggle with the officers, breaking Smith's grasp on his right arm and reaching into the backseat area. The officers repeatedly—and loudly—ordered defendant to keep his hands visible, to hold still, and to stop resisting, but he failed to comply, even after the officers began to strike him about the head and neck. Defendant tried to shove the officers out of the car and continued reaching into his pockets. A third officer responded to the scene and helped to subdue defendant. Ultimately, the police were able to place defendant in handcuffs and remove him from the vehicle. Even then, however, defendant continued to try to reach into his pockets. Officer Smith suffered minor injuries during the struggle, including bruising around his eyes.

During the scuffle in the car, Hough smelled a "foul and distinct odor" that he believed to be cocaine. After defendant was removed from the car, Officer Smith noticed a "white substance" on his uniform, which he identified as powdered cocaine. Defendant's hands were coated in powdered cocaine, as well. Upon returning to defendant's vehicle, Hough saw "a white powdery substance" present in the areas toward which defendant had been reaching while in the vehicle. During a subsequent search conducted by an SOS officer, cocaine was found scattered "everywhere" throughout the vehicle, both in loose powder and contained in small

-3-

"baggies." Although no firearm was located in the vehicle, a clip loaded with .45 caliber ammunition was found on the floor behind the driver's seat. At the time of his arrest, defendant had more than $2,500 cash in his vehicle and on his person.

After he was arrested, defendant gave the police the address of an apartment on St. Joseph Street in Lansing, claiming that he lived there. An officer was dispatched to investigate that address; it appeared that no one was residing there. After speaking with defendant's mother, the police learned that defendant had been living with his girlfriend, Lukeisha Glasscoe, in a townhouse in Meridian Township (the townhouse). The police obtained a warrant to search the townhouse and several vehicles parked outside of it. During the ensuing searches, the police discovered a loaded handgun from which the serial numbers had been filed, ammunition, $5,500 in cash, several cellphones, two digital scales coated with white powder, a razor blade with white residue on it, empty plastic baggies, and roughly 400 grams of cocaine (consisting of both crack and powder cocaine). There was enough cocaine in the townhouse to manufacture roughly 4,000 crack "rocks" of typical street weight, and no paraphernalia of cocaine consumption was found in the townhouse.

Before trial, defendant filed a motion seeking to suppress the evidence found at the townhouse and in the vehicles parked outside of it. The trial court denied defendant's pretrial motion to suppress, and defendant does not contest that ruling in the instant appeal. Defendant sought leave to pursue an interlocutory appeal of the trial court's ruling, but defendant's appeal was administratively dismissed by this Court without prejudice.[2] Later, during his jury trial, defendant filed another motion to suppress, seeking to suppress any evidence resulting from his investigatory stop. The trial court denied defendant's second motion to suppress, as well.

At the outset of defendant's jury trial, the prosecution noted that it had prepared an exhibit list, had provided a copy of that list to both the court and defense counsel, and had made all of the exhibits available for defense counsel's review. The exhibit list identified prosecution exhibit 78 as follows: "letter from Cornelius Brown (#13)[.]"[3] The exhibit in question was comprised of an envelope and a two-page letter.

On the second day of trial, the prosecution moved to admit prosecutorial exhibits 72 through 78 en masse. When asked whether defendant had any objection to the admission of such exhibits, defense counsel replied, "No objection." Thus, exhibit 78 was admitted into evidence.

On the third day of trial, the prosecution began to question an SOS sergeant about exhibit 78. The following exchange occurred:

---

[2] *People v Mark Booker*, unpublished order of the Court of Appeals, entered January 28, 2015 (Docket No. 324609).

[3] While arguing a posttrial motion below, defendant's appellate counsel admitted that the prosecution did, in fact, show exhibit 78 to defendant's trial counsel before trial.

-4-

*Q*. All right. Showing you what's already been admitted as Exhibit 78. What is this item?

*A*. It is an envelope from the State of Michigan corrections department with the name -- from Cornelius Brown.

*Q*. To?

*A*. To Mr. Mark Booker [i.e., defendant].

*Q*. What address?

*A*. 4609 South King.

*Q*. So not the St. Joe address?

*A*. No, sir.

*Q*. And not the [townhouse] address?

*A*. It was not.

[*Defense Counsel*]: Objection, Your Honor. Apparently he's looking to put forth a letter that was contained in the envelope. I mean, it would essentially be looking to put forth hearsay.

[*Assistant Prosecutor*]: We're not offering it for the content, Your Honor.

[*Defense Counsel*]: I don't know what other purpose he would be offering a letter written to the defendant.

[*Assistant Prosecutor*]: Because it uses -- it references cocaine and heroin and when found in the immediate proximity to cocaine, two baggies, it's of relevance, not offered for the truth of the matter.

[*Defense Counsel*]: That would make it as the point of other act, 404.

[*Assistant Prosecutor*]: Statements are not acts and the case law on that issue is very clear.

[*The Court*]: Well, if you're arguing 404 -- I'm assuming it's 404(b) . . . other crimes wrongs, or acts, and under that it says it may, however, be admissible for other purposes. . . . Is that what we're arguing, counsel?

[*Assistant Prosecutor*]: Your Honor, at this point I guess in the name of time I'm going to move on. I think that would be easier.

[*The Court*]: So you're withdrawing it?

[*Assistant Prosecutor*]: I am going to withdraw. The exhibit has already been admitted but I will not dwell on it at this time.

[*The Court*]: Okay. Withdrawn. I won't make a ruling.

[*Assistant Prosecutor*]: All right.

Thereafter, defendant did not move to strike exhibit 78. At the close of the prosecution's proofs, the trial court confirmed that all of the prosecution's 94 exhibits had been admitted into evidence, with the exception of prosecution exhibit 50. Defendant did not contest that exhibit 78 had been duly admitted into evidence.

Before the jury retired for deliberations, the trial court asked counsel whether, if the jurors asked to see evidentiary exhibits during their deliberations, the trial court could send those exhibits back for the jury's review without first consulting counsel. The parties stipulated that the trial court could send requested exhibits back to the jury without any need to first notify counsel.

During their deliberations, the jury sent a note posing several questions to the trial court, including the following: "Letter from Cornelius (Prisoner) Can we read?" In response, the trial court provided the jury with exhibit 78. A short time later, the jury returned its guilty verdicts against defendant. Defendant's appeal in Docket No. 326570 ensued.

After he was sentenced, defendant filed a motion for a new trial pursuant to MCR 6.431 and MCR 7.208(B). After twice entertaining oral argument on the matter, the trial court granted defendant a new trial. The prosecution's appeal in Docket No. 332975 followed.

## II. STANDARDS OF REVIEW

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or makes an error of law[.]" *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010) (citations omitted). Related issues concerning the interpretation of a court rule are reviewed de novo. *Id*. On the other hand, the trial court's factual findings are reviewed for clear error. *People v Mazur*, 497 Mich 302, 308; 872 NW2d 201 (2015). "A factual finding is clearly erroneous if it either lacks substantial evidence to sustain it, or if the reviewing court is left with the definite and firm conviction that the trial court made a mistake." *Id*.

"Whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Also reviewed de novo is a trial court's ultimate ruling on a motion to suppress. *People v Tierney*, 266 Mich App 687, 703; 703 NW2d 204 (2005).

Unpreserved issues regarding prosecutorial misconduct are reviewed for plain error affecting defendant's substantial rights. *People v Ortiz*, 249 Mich App 297, 313; 642 NW2d 417 (2001).

To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted).]

## III. ANALYSIS

## A. MOTION FOR A NEW TRIAL

On appeal, the prosecution argues that the trial court abused its discretion by granting defendant's motion for a new trial. We agree.

As an initial matter, we are unpersuaded by defendant's argument that the letter portion of exhibit 78 was "never" actually admitted into evidence. In deciding defendant's motion for a new trial, the trial court expressly found that the letter *was* admitted into evidence, and that finding is well supported by the record evidence. We perceive no clear error in the trial court's finding that the letter was admitted into evidence.

However, the trial court's ultimate decision regarding defendant's motion for a new trial relied on an erroneous legal analysis. MCR 6.431(B) provides that a trial court may grant a defendant's motion for a new trial "on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice," further providing that "[t]he court must state its reasons for granting or denying a new trial. . . ." Here, the trial court did not state any conclusion that the verdicts against defendant had resulted in a miscarriage of justice; rather, the trial court reasoned that the introduction of exhibit 78 constituted plain error that would entitle defendant to a new trial on appeal. By so ruling, the trial court erred.

Defendant did not object to the introduction of exhibit 78 at the time it was admitted. Thus, any issues regarding the admissibility of exhibit 78 are unpreserved, see *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), and reviewed for plain error affecting defendant's substantial rights, see *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

Here, the contested letter has no seeming relevance to the offenses for which defendant was convicted (i.e., cocaine possession and resisting arrest), and any minimal prejudicial impact from the letter was inconsequential in the face of the overwhelming evidence against defendant. Because of the weight of the evidence against him, defendant cannot carry his burden of demonstrating that the admission of exhibit 78 was outcome determinative. By holding otherwise, the trial court erroneously determined that the introduction of the letter constituted plain error that would entitle defendant to reversal on appeal. Its error in this regard led it to abuse its discretion by granting defendant's motion for a new trial. See *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012) ("A trial court necessarily abuses its discretion when it makes an error of law."). Hence, we reverse the trial court's order granting defendant a new trial.

## B. PROSECUTORIAL MISCONDUCT[4]

Defendant argues that the prosecution engaged in intentional misconduct regarding the letter contained in exhibit 78, which, he posits, entitles him to a new trial. We disagree.

Because an objection could have cured the purported error and defendant did not timely and specifically object to the prosecutorial conduct he now challenges on appeal, this issue is unpreserved and reviewed for plain error affecting defendant's substantial rights. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011).

The majority of defendant's arguments are premised on his position that the letter portion of exhibit 78 was never actually admitted into evidence. As we have already explained, however, the trial court did not clearly err in finding that the letter was, in fact, admitted into evidence. Thus, the major part of defendant's instant argument fails at the most elementary level. Because the record and the trial court's findings demonstrate that exhibit 78 *was* admitted into evidence, the prosecution's reliance on that exhibit was not, as defendant claims, an improper reliance on "extrinsic" evidence.[5]

Defendant also argues, however, that the prosecution's comments regarding the substance of exhibit 78 were improper. Even assuming, arguendo, that the prosecution's argument *was* improper, reversal is unwarranted for two primary reasons. First, defendant has failed to demonstrate the requisite prejudice to prevail under plain error review. Considering the weighty evidence against him, defendant has not demonstrated that the prosecution's improper argument was outcome determinative. Second, any prejudice defendant might have suffered was remediated by the trial court's subsequent instruction that "[t]he lawyers' statements and arguments and any commentary are not evidence. . . ." "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). In the absence of any evidence to the contrary, we must presume that the jurors followed the trial court's instructions and refused to consider the prosecution's improper argument as evidence against defendant.

---

[4] We employ the phrase "prosecutorial misconduct" as a term of art synonymous with "prosecutorial error," not as a suggestion that the prosecution engaged in intentional misconduct. See generally *People v Jackson*, 313 Mich App 409, 425; 884 NW2d 297 (2015).

[5] Moreover, defendant waived any argument that the jury's consideration of exhibit 78 constituted error. Before the jury retired for deliberations, the trial court asked counsel whether, if the jurors asked to see evidentiary exhibits during their deliberations, the court could send those exhibits for the jury's review without first consulting counsel. Defense counsel agreed that the trial court could send requested exhibits to the jury without any need to first notify counsel. By doing so, defendant waived any claim of error related to the trial court's subsequent decision to provide exhibit 78 to the deliberating jury. See *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998). "[W]aiver extinguishes any error and precludes defendant from raising the issue on appeal." *People v Carter*, 462 Mich 206, 209; 612 NW2d 144 (2000).

C. SEARCH AND SEIZURE

Defendant next argues that the trial court erred by denying his motion to suppress the evidence obtained as a result of his traffic stop and the ensuing searches of his person and property. We disagree.

"The right against unreasonable searches and seizures is guaranteed by both the United States and Michigan Constitutions." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).[6] "An investigatory stop, which is limited to a brief and nonintrusive detention, constitutes a Fourth Amendment seizure." *People v Jones*, 260 Mich App 424, 429; 678 NW2d 627 (2004).

> Generally, if evidence is unconstitutionally seized, it must be excluded from trial. But a police officer may stop and detain a motor vehicle on the basis of an articulable and reasonable suspicion that the vehicle or one of its occupants is violating the law, including a law regulating equipment. This Court's determination of whether there was reasonable suspicion to justify a stop must be made on a case-by-case basis, evaluated under the totality of the circumstances, and based on common sense. The subjective intent of the police officer is irrelevant to the validity of the stop.
>
> A court is required to suppress evidence otherwise lawfully seized during a traffic stop only if the officer did not have reasonable suspicion to justify the stop. [*People v Dillon*, 296 Mich App 506, 508-509; 822 NW2d 611 (2012) (citations omitted).]

Reasonable suspicion may be founded upon "specific reasonable inferences" the police are able "to draw from the facts in light of [their] experience." *Jones*, 260 Mich App at 429.

Defendant first contends that, because they did not witness him commit any traffic violations, Officers Smith and Hough lacked any reasonable, articulable suspicion to justify stopping defendant's vehicle. Under the totality of the circumstances, however, the officers had reasonable suspicion to believe that defendant's vehicle had been involved in a drug sale. While located within a high-crime area about which the police had recently received reports of drug activity, defendant's vehicle engaged in a pattern of behavior that, according to the testimony of several officers, is frequently used to hide drug transactions from police surveillance. Given the circumstances, it was reasonable for the officers to infer from their experience that defendant had

---

[6] To the extent it is based upon our state Constitution, however, defendant's suppression argument necessarily fails because the narcotic evidence defendant sought to exclude was seized outside the curtilage of a Michigan dwelling house. See Const 1963, art 1, § 11 ("The provisions of this section *shall not* be construed to bar from evidence in any criminal proceeding *any narcotic drug*, firearm, bomb, explosive or any other dangerous weapon, *seized by a peace officer outside the curtilage of any dwelling house in this state*.") (emphases added). See also *People v Goldston*, 470 Mich 523, 537-538; 682 NW2d 479 (2004).

violated the law by either selling or receiving a controlled substance. Therefore, the police did not run afoul of the Fourth Amendment when they initially performed an investigatory stop of defendant.

Likewise, the police did not subject defendant to a constitutionally unreasonable search or seizure by ordering him to exit his vehicle. "A police officer may order occupants to get out of a vehicle, pending the completion of a traffic stop, without violating the Fourth Amendment's proscription against unreasonable searches and seizures." *People v Chapo*, 283 Mich App 360, 368; 770 NW2d 68 (2009). Nor did the police subject defendant to an unreasonable seizure by placing him under arrest. Defendant's failure to obey Officer Smith's lawful command to exit the vehicle provided the officers with probable cause to execute a warrantless arrest. See *id*.

The search of defendant's person after his arrest was also justified under well-established law. "Among the exceptions to the warrant requirement is a search incident to a lawful arrest," which "exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v Gant*, 556 US 332, 338; 129 S Ct 1710; 173 L Ed 2d 485 (2009). Under this exception, both "the arrestee's person and the area within his immediate control" are subject to a warrantless search at the time of arrest. *Id*. at 339 (quotation marks and citation omitted). Thus, the search of defendant's person was lawful incident to his arrest.

Finally, after arresting defendant, the officers had probable cause to conduct a warrantless search of his vehicle. Under the "automobile exception" to the warrant requirement, even if no exigency exists, "a search without a warrant of an automobile is reasonable if probable cause exists to believe it contains contraband." *People v Clark*, 220 Mich App 240, 242; 559 NW2d 79 (1996). Under the totality of the circumstances, we conclude that the police had probable cause to believe that defendant's vehicle contained contraband. Defendant was stopped under reasonable suspicion that he had engaged in a drug sale; he was seen moving within his vehicle after he was stopped and after he had been ordered to exit the vehicle; he refused to exit the vehicle upon threat of arrest; he resisted arrest and continued to reach around within his vehicle while struggling with two officers, even after they began to strike him; and after he was finally subdued there was visible cocaine on his hands and on Officer Smith's uniform, visible white powder within the vehicle, and a perceptible odor of cocaine. Hence, there was probable cause to believe that narcotics were present in defendant's vehicle.

In sum, the police conduct about which defendant complains did not constitute an unreasonable search or seizure under the Fourth Amendment. Consequently, the trial court did not err by denying defendant's motion to suppress the evidence obtained as a result of his traffic stop and the ensuing searches.

### D. EFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his trial counsel performed ineffectively in several ways. Defendant further argues that his counsel's deficient performance entitles defendant to a new trial. We disagree.

-10-

A criminal defendant bears the burden of proving the factual predicate for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. A defendant must also show that the result that did occur was fundamentally unfair or unreliable. [*People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted).]

The "reviewing court must not evaluate counsel's decisions with the benefit of hindsight," but should "ensure that counsel's actions provided the defendant with the modicum of representation" constitutionally required. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Thus, there is a "strong presumption that trial counsel's performance was strategic," and "[w]e will not substitute our judgment for that of counsel on matters of trial strategy[.]" *Id.* at 242-243.

## 1. INTERLOCUTORY APPEAL

Defendant first argues that his trial counsel performed ineffectively by filing a deficient application for leave to appeal in this Court and then allowing defendant's interlocutory appeal to be administratively dismissed. It is true that the failure to duly perfect an appeal can represent ineffective assistance of counsel. See, e.g., *People v Barrera*, 439 Mich 870 (1991). Indeed, in many cases the failure to do so will be *facially* ineffective; it will be an exceedingly rare instance where it is reasonable to allow an appeal to be administratively dismissed.

The case before us, however, seems to provide the exception to that general rule. The distinction here arises out of the timeline of relevant events. The trial court did not rule on defendant's pretrial motion to suppress until November 13, 2014, i.e., four days before trial began. At the time the trial court orally announced its decision, defense counsel requested a stay of trial, seeking time to obtain interlocutory review of the motion to suppress in this Court. But in an order entered the next day, the trial court refused to grant defendant's requested stay, holding that trial would begin as scheduled. That same day, November 14, 2014, defense counsel nevertheless filed an application for leave to appeal in this Court. Four days later, on November 18, 2014—i.e., the second day of trial—this Court mailed correspondence to the parties notifying them of several deficiencies in defendant's filing. Based on the date that the deficiency notice was mailed, it is altogether possible that defense counsel was unaware of the deficiencies until after trial concluded on November 20, 2014. It was not until January 28,

2015—more than two months after the jury returned its verdicts against defendant—that defendant's interlocutory appeal was administratively dismissed.[7]

On appeal, defendant contends that his trial counsel should have filed motions in this Court for immediate consideration and for a stay of the proceedings below pending appeal. Considering the obvious time constraints and exigencies, however, we conclude that defendant has failed to rebut the presumption that counsel's decision was strategic. As those familiar with trial advocacy know, the last few days before a jury trial often represent a hectic period of rushed preparation during which counsel has a finite amount of time to prepare for the myriad contingencies that may arise at trial. Here, after initially filing an application for leave to appeal in this Court, counsel might have decided that his limited time was better spent on trial preparation than on a last-ditch attempt to obtain an emergency stay from this Court. Had counsel done otherwise and lost the gamble, failing to obtain a stay, he might have been unprepared or underprepared to represent defendant at trial. On the other hand, counsel's failure to perfect the interlocutory appeal had no practical effect on defendant's ability to eventually obtain appellate review; therefore, counsel might have thought it most prudent to allow defendant's appellate counsel to decide whether to pursue the suppression issue as part of defendant's appeal of right. Notably, in its order of administrative dismissal, this Court dismissed the interlocutory appeal *without* prejudice. Hence, although he has failed to do so, defendant could have sought review of the trial court's denial of his pretrial motion to suppress in his instant appeal. In temporal context, defense counsel's decisions regarding the interlocutory appeal were seemingly rooted in pragmatism and sound strategy, not ineptitude or neglect, and defendant has cited no record evidence to the contrary.

Moreover, defendant has not shown that, absent counsel's error, a different result was reasonably probable. Again, counsel's failure to perfect the interlocutory appeal had no impact on defendant's ability to seek appellate review of the trial court's decision regarding his pretrial motion to suppress evidence. Because it did not prevent him from ultimately seeking appellate review, defendant has failed to demonstrate a reasonable probability of a different outcome but for the purported error.

## 2. FAILURE TO OBJECT AND TO SEEK A MISTRIAL

Defendant next argues that his trial counsel performed ineffectively by failing to object when the jury was provided with exhibit 78. In other words, defendant argues that his trial counsel should not have agreed that all exhibits—including exhibit 78—could be sent to the jury during deliberations without any need to consult counsel.

Defendant fails to recognize that "decisions regarding what evidence to present . . . are presumed to be matters of trial strategy, and we will not second-guess strategic decisions with the benefit of hindsight." See *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). Also, in light of the letter's relatively minor prejudicial impact, defendant has failed to

---

[7] *People v Mark Booker*, unpublished order of the Court of Appeals, entered January 28, 2015 (Docket No. 324609).

establish a reasonable probability that, but for counsel's purported error, a different outcome would have resulted. Nor has defendant shown that the result that actually occurred was fundamentally unfair or unreliable. Given the weight of the evidence against him, we conclude that the introduction of exhibit 78 did not prejudice defendant's substantial rights.

Defendant also provides a cursory argument that his trial counsel performed ineffectively by failing to request a mistrial after the jury was permitted to review exhibit 78. Defendant has again failed to rebut the strong presumption that counsel's performance was effective. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion," *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014), and defendant cites no authority in support of his implicit suggestion that a mistrial would have been granted had counsel requested one. Defendant cannot tacitly announce such a position and expect this Court to perform as his research assistant. By failing to provide the requisite argument and authority in support of it, defendant has abandoned his argument of this issue. See *id*. at 142. See also *People v Chapo*, 283 Mich App 360, 367; 770 NW2d 68 (2009) (noting that an appellant's "failure to brief a necessary issue precludes appellate relief") (citation omitted).

## IV. CONCLUSION

In Docket No. 326570, we affirm defendant's convictions and sentences. In Docket No. 332975, we reverse the trial court's order granting defendant a new trial.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Brock A. Swartzle

-13-