BERNSTEIN, J.
This case requires us to examine immunity under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 et seq. We are specifically concerned with the application of the MMMA’s immunity provisions to individuals who are neither registered qualifying patients nor primary caregivers. See MCL 333.26424(g); MCL 333.26424(i).
We hold that a defendant claiming that he or she is solely in the presence or vicinity of the medical use of marijuana is not entitled to immunity under MCL 333.26424(f) when the medical use of marijuana was not in accordance with the act. Nor is a defendant entitled to immunity under MCL 333.26424(f) when the defendant’s conduct goes beyond assisting with the use or administration of marijuana. However, we hold that “marihuana paraphernalia,” as that phrase is used in MCL 333.26424(g), includes items that are both specifically designed or actually employed for the medical use of marijuana. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the circuit court for further proceedings consistent with this opinion.
I. FACTS AND PROCEDURAL HISTORY
Defendant Cynthia Mazur is the wife of David Mazur, who was himself both a registered qualifying patient and a registered primary caregiver for two medical *307 marijuana patients. David Mazur grew marijuana in their marital home. Officers of the Holly Police Department, acting on a tip, searched the residence for marijuana. Marijuana plants, dried marijuana, and pipes with marijuana residue were found. In executing the search, an officer questioned defendant, who used the first-person plural pronoun “we” when describing the marijuana operation. Although the use of this pronoun led the officers to conclude that defendant was a participant in her husband’s marijuana operation, defendant maintains that her involvement was limited to writing the date of harvest for marijuana plants on several sticky notes.
The Oakland County Prosecutor charged both defendant and David with marijuana-related offenses. In a separate proceeding, David pleaded guilty to one count of possession with intent to deliver less than five kilograms or fewer than 20 plants of marijuana, MCL 333.7401(2)(d)(iii), and one count of manufacturing less than five kilograms or fewer than 20 plants of marijuana, id. Defendant was charged with the same two offenses. Defendant moved to dismiss the charges against her citing the immunity provision of the MMMA, MCL 333.26424. The circuit court held that MCL 333.26424(g) did not apply because there was no evidence that defendant provided marijuana paraphernalia to either a registered qualifying patient or a caregiver; the circuit court also held that MCL 333.26424(f) did not apply because David’s use of medical marijuana was not in compliance with the MMMA. The Court of Appeals affirmed. People v Mazur, unpublished opinion per curiam of the Court of Appeals, issued April 1, 2014 (Docket No. 317447).
Defendant then sought leave to appeal in this Court. We directed the Clerk of the Court to schedule oral *308 argument on whether to grant the application or take other action, asking the parties to address:
[Wlhether the defendant is entitled to immunity under § 4 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 et seq., specifically MCL 333.26424(g) and/or MCL 333.26424(i), where [defendant’s] spouse was a registered qualifying patient and primary caregiver under the act, but his marijuana-related activities inside the family home were not in full compliance with the act. [People v Mazur, 497 Mich 883 (2014).]
II. STANDARD OF REVIEW
Questions of statutory interpretation are reviewed de novo. Michigan v McQueen, 493 Mich 135, 146-147; 828 NW2d 644 (2013). Statutes enacted by the Legislature are interpreted in accordance with legislative intent; similarly, statutes enacted by initiative petition are interpreted in accordance with the intent of the electors. Id. at 147. We begin with an examination of the statute’s plain language, which provides “the most reliable evidence” of the electors’ intent. See Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting United States v Turkette, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).
This Court reviews a trial court’s findings of fact for clear error. Miller-Davis Co v Ahrens Constr, Inc, 495 Mich 161, 172-173; 848 NW2d 95 (2014). A factual finding is clearly erroneous if it either lacks substantial evidence to sustain it, or if the reviewing court is left with the definite and firm conviction that the trial court made a mistake. Id.
III. IMMUNITY UNDER THE MICHIGAN MEDICAL MARIHUANA ACT
The MMMA was enacted by voter referendum in 2008 and allows for the medical use of marijuana to *309 treat or alleviate the pain associated with a debilitating medical condition. Although the Legislature has since amended the MMMA by enacting 2012 PA 512 and 2012 PA 514, the conduct at issue occurred before the date these amendments took effect. Therefore, we consider only the MMMA as originally enacted.
Section 4 of the MMMA concerns immunity. A qualifying patient who receives a registry identification card is entitled to immunity, provided that certain conditions are met. MCL 333.26424(a). A primary caregiver who receives a registry identification card is entitled to the same protection. MCL 333.26424(b). Both Subsections (a) and (b) state that this protection only applies to the “medical use of marihuana in accordance with this act.” MCL 333.26424(a) and (b). “Medical use” is defined as:
[T]he acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient’s debilitating medical condition or symptoms associated with the debilitating medical condition. [MCL 333.26423(e), as enacted by 2008 IL 1.]
Two additional provisions of the MMMA provide immunity to people who are neither registered qualifying patients nor primary caregivers: MCL 333.26424(g) and MCL 333.26424(i). These are the two provisions under which defendant claims immunity.
Section 4(g) states:
A person shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for providing a registered qualifying patient or a registered primary caregiver with marihuana *310 paraphernalia for purposes of a qualifying patient’s medical use of marihuana. [MCL 333.26424(g) (emphasis added).]
Section 4(i) states:
A person shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, solely for being in the presence or vicinity of the medical use of marihuana in accordance with this act, or for assisting a registered qualifying patient with using or administering marihuana. [MCL 333.26424(i) (emphasis added).]
IV APPLICATION
Defendant claims entitlement to the immunity defense under both §§ 4(g) and 4(i) of the MMMA. Because we agree with the Court of Appeals that defendant is not entitled to immunity under § 4(i), we begin our analysis with an examination of that section.
A. MCL 333.264246)
Section 4(i) of the MMMA offers two distinct types of immunity, as evidenced by the use of the disjunctive “or.” A person may claim immunity either: (1) “for being in the presence or vicinity of the medical use of marihuana in accordance with this act,” or (2) “for assisting a registered qualifying patient with using or administering marihuana.” MCL 333.26424(i). These clauses are also preceded and modified by the adverb “solely,” which places a limitation on both claims of immunity.
We hold that defendant is not entitled to either type of immunity under § 4(i) of the MMMA. As to the first immunity provision in § 4(i), a person is only entitled to *311 immunity when the underlying medical use of marijuana is in accordance with the MMMA. Although we decline to state whether defendant’s husband’s convictions should have been persuasive in deciding whether defendant was eligible for immunity, we agree with the Court of Appeals that the evidence showed that the marijuana operation was not in accordance with the MMMA.[1]
Defendant argues that she has no control over the acts of another autonomous being, and that if one is merely limited to being present, one is necessarily unable to intervene. But to read § 4(i) in the manner that defendant requests would render the phrase “in accordance with this act” superfluous, and “ [t]his Court ‘must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory.’ ” People v Cunningham, 496 Mich 145, 154; 852 NW2d 118 (2014), quoting State Farm Fire & Cas Co v Old Republic Ins Co, 466 Mich 142, 146; 644 NW2d 715 (2002). We recognize the apparent inequity of holding one individual responsible for another’s wrongdoing; however, the plain language of the statute does not allow for another reading.[2]
This Court has previously addressed the second claim of immunity in § 4(i):
Notably, § 4(i) does not contain the statutory term “medical use,” but instead contains two of the nine activities that encompass medical use: “using” and “administering” marijuana.... In this context, the terms “using” and *312 “administering” are limited to conduct involving the actual ingestion of marijuana. Thus, by its plain language, § 4(i) permits, for example, the spouse of a registered qualifying patient to assist the patient in ingesting marijuana, regardless of the spouse’s status. [McQueen, 493 Mich at 158 (emphasis added).]
“Medical use”, as defined in former § 3(e),[3] is a term that encompasses nine different actions. Because the second type of immunity available under § 4(i) refers generically to “using and administering” marijuana and not to the statutorily defined “medical use” of marijuana, this Court read § 4(i) narrowly in McQueen. Because the defendants in McQueen were engaged in the transfer, delivery, and acquisition of marijuana— activities that are found under the umbrella of “medical use”—but were not engaged in the mere use and administration of marijuana, this Court found that they were not entitled to immunity under § 4(i). Id. Similarly, defendant here was not merely assisting her husband with conduct involving the actual ingestion of marijuana; instead, she assisted him with the cultivation of marijuana. Because assisting in the cultivation of marijuana does not constitute assistance with “using” or “administering” marijuana, defendant cannot lay claim to immunity under this provision of the MMMA.
B. MCL 333.26424(g)
Under § 4(g) of the MMMA, an individual may claim immunity “for providing a registered qualifying patient or a registered primary caregiver with marihuana paraphernalia for purposes of a qualifying patient’s medical use of marihuana.” MCL 333.26424(g). At issue here is *313 the definition of the term “marihuana paraphernalia,” which is not explicitly defined in the MMMA.
In parsing this term, the Court of Appeals adopted the definition of “drug paraphernalia” used in the Public Health Code, MCL 333.1101 et seq.:
[A]ny equipment, product, material, or combination of equipment, products, or materials, which is specifically designed for use in planting; propagating; cultivating; growing; harvesting; manufacturing; compounding; converting; producing; processing; preparing; testing; analyzing; packaging; repackaging; storing; containing; concealing; injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance[.] [MCL 333.7451 (emphasis added).]
The Court of Appeals reasoned that it was appropriate to refer to this definition, given that the Public Health Code and the MMMA are in pari materia, because both “restrict the use of controlled substances.” Mazur, unpub op at 3. In particular, the Court of Appeals focused on the phrase “specifically designed for use in,” which modifies the list of activities that follows.
As an initial matter, we note that the Court of Appeals erred by relying on the doctrine of in pari materia to determine the meaning of “marihuana paraphernalia.” Under the doctrine, statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law. People v Harper, 479 Mich 599, 621; 739 NW2d 523 (2007). An act that incidentally refers to the same subject is not in pari materia if its scope and aim are distinct and unconnected. Palmer v State Land Office Bd, 304 Mich 628, 636; 8 NW2d 664 (1943). Here, the MMMA and the Offenses and Penalties provisions of the Controlled Substances article of the Public *314 Health Code[4] have two diametrically opposed purposes. The MMMA’s purpose is to allow medical marijuana use for certain individuals under limited circumstances, whereas the purpose of the Offenses and Penalties provisions is to criminalize marijuana use and related activities. See MCL 333.7401. The Court of Appeals was wrong to state that these two provisions “relate to the same subject, i.e., restrict the use of controlled substances[.]” The aim of each statute is distinct, and indeed they are contrary to one another.
Furthermore, MCL 333.7451 begins with an important qualifier: “As used in sections 7453 to 7461 and section 7521, ‘drug paraphernalia’ means . ...” By specifically limiting the applicability of this definition to certain statutory provisions, the Legislature expressed a clear intent that the definition should not be applied elsewhere. Application of the in pari materia doctrine would, therefore, be contrary to legislative intent. This Court held similarly in Woodard v Custer, 476 Mich 545; 719 NW2d 842 (2006), which addressed the meaning of the phrase “board certified” in MCL 600.2169. The Legislature did not specifically define “board certified” in MCL 600.2169. Plaintiffs argued that the Court should read MCL 600.2169 in pari materia with the Public Health Code’s definition, MCL 333.2701(a). This Court disagreed given that “the Legislature specifically limited the use of the Public Health Code’s definition of ‘board certified’ to the Public Health Code ....” Woodard, 476 Mich at 563.[5] Because the Legislature specifi *315 cally limited the use of the Public Health Code’s definition of “drug paraphernalia” to certain provisions of the Public Health Code, it would be antithetical to the interpretive enterprise to apply the definition of “drug paraphernalia” beyond the scope prescribed.
Because we decline to rely on the definition of “drug paraphernalia” set forth in the Public Health Code to inform our understanding of the phrase “marihuana paraphernalia” as used in the MMMA, we turn instead to other conventional means of statutory interpretation. Generally, when a word used in a statute is not specifically defined, it bears “its common and approved usage of the language.” MCL 8.3a. Accordingly, in order to decipher what the electors meant by “marihuana paraphernalia,” we turn to the dictionary. “Marihuana” is quite well understood in this context. “Paraphernalia” is defined as “equipment, apparatus, or furnishings used in or necessary for a particular activity.” Random House Webster’s College Dictionary (2005). Nothing in this definition states that a specific design must be intended.
Because “[t]he law is not properly read as a whole when its words and provisions are isolated and given meanings that are independent of the rest of its provisions,” Lansing Mayor v Pub Serv Comm, 470 Mich 154, 168; 680 NW2d 840 (2004), we must also read the phrase “marihuana paraphernalia” in light of the rest *316 of § 4(g). In particular, “marihuana paraphernalia” must be read in light of the adjacent phrase “medical use of marihuana.”[6] Read as a whole, the statute states that “marihuana paraphernalia” is employed for the “medical use” of marijuana. As previously noted, “medical use” is defined by statute, and includes several activities. When modified by the expansive definition of “medical use,” it becomes clear that “marihuana paraphernalia” cannot be so limited as to only include those items that are specifically designed for the medical use of marijuana.
First, the phrase “for purposes of a qualifying patient’s medical use of marihuana” indicates that an item may or may not be “marihuana paraphernalia,” depending on the use to which it is put. Second, “medical use” is a broader term than mere use or administration. As discussed in McQueen, the drafters could easily have chosen the narrower language we see in § 4(i), but they did not. “Medical use” refers to activities as broad as transportation, internal possession, and cultivation. To only include items that were specifically designed for the medical use of marijuana would be to turn the statutorily defined phrase “medical use” into meaningless surplusage. See, e.g., Robinson v Lansing, 486 Mich 1, 21; 782 NW2d 171 (2010) (explaining that “it is well established that ‘[i]n interpreting a statute, we [must] avoid a construction that would render part of the statute surplusage or nugatory’ ”) (citation omitted). Although one might conceive of paraphernalia that is specifically designed for the use *317 or internal possession of marijuana, one is necessarily stymied when attempting to identify paraphernalia that is specifically designed for the cultivation of marijuana; surely a trowel that one uses for growing cherry tomatoes could also be employed in a marijuana operation and vice versa.
The statutory definition of “medical use” is the “acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient’s debilitating medical condition[.]” Former MCL 333.26423(e).[7] The dissents point to the use of the phrase “relating to the administration of marihuana” to suggest that objects must be used to administer or ingest marijuana in order to be considered marihuana paraphernalia. But this reading conflates the more expansive definition of “medical use” with the narrower definition of use and administration. In McQueen, this Court outlined the difference between the mere “use” and “administration” of marijuana, which is “limited to conduct involving the actual ingestion of marijuana.” McQueen, 493 Mich at 158 (emphasis added). In contrast, this Court acknowledged that the definition of “medical use” was broader and incorporated activities such as “[t]he transfer, delivery, and acquisition of marijuana.” Id. Therefore, a qualifying patient’s transfer, delivery, acquisition, or cultivation of marijuana is a medical use according to a plain-language reading of the statute.
The use of conventional means of statutory interpretation thus leads us to hold that “marihuana paraphernalia” applies both to those items that are specifically designed for the medical use of marijuana as well as *318 those items that are actually employed for the medical use of marijuana. In this case, defendant provided her husband, who was both a qualifying patient and a registered caregiver, with sticky notes for the purpose of detailing the harvest dates of his plants.[8] This activity constitutes the provision of “marihuana paraphernalia” because the objects were actually used in the cultivation or manufacture of marijuana. See former MCL 333.26423(e).
The provision of sticky notes in this case therefore falls within the scope of § 4(g). The prosecution is therefore prohibited from introducing or otherwise relying on the evidence relating to defendant’s provision of marihuana paraphernalia—i.e., the sticky notes—as a basis for the criminal charges against defendant.[9] If that is the only basis for criminal charges, then a successful showing under § 4(g) will result in the dismissal of charges. However, if there is additional evidence supporting criminal charges against defendant, nothing in § 4(g) prohibits the prosecution from proceeding on the basis of the remaining evidence.
*319 V CONCLUSION
Although we hold that defendant is not entitled to immunity under § 4(i) of the MMMA, we conclude that the Court of Appeals erred in its interpretation of § 4(g) of the MMMA. We reverse the judgment of the Court of Appeals and remand to the circuit court for further proceedings consistent with this opinion.[10] We do not retain jurisdiction.
Kelly, McCormack, and Viviano, JJ., concurred with BERNSTEIN, J.

 Additionally, we directed the parties to address whether defendant was entitled to immunity when “[defendant’s husband’s] marijuana-related activities inside the family home were not in full compliance with the act.” Mazur, 497 Mich at 883 (emphasis added).

 It bears noting that traditional criminal defenses, such as challenges to the sufficiency of the evidence, are still available to defendant.

. “Medical use” is now defined in MCL 333.26423(f).

 Article 7 of the Public Health Code, MCL 333.7101 et seq., concerns controlled substances. Part 74 of Article 7, MCL 333.7401 et seq., concerns controlled-substance offenses and penalties.

 A separate concurrence agreed with the majority on this point:
We decline to impute the definition of “board certified” from MCL 333.2701(a) to MCL 600.2169 for several reasons. First, the *315 Legislature made clear that the definition of “hoard certified” set forth in MCL 333.2701(a) applies only to the Public Health Code by prefacing it with the statement “As used in this part [of the Public Health Code] . . . ‘Board certified’ means . . . .” (Emphasis added.) Especially in light of such clear words of limitation, we must presume that the Legislature intended that the definition of “hoard certified” set forth in MCL 333.2701(a) would not be applied to other statutes using the same phrase. [Woodard, 476 Mich at 610-611 (Taylor, C.J., concurring) (alteration in original)].

 “The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.” Sun Valley Foods Co v Ward, 460 Mich 230, 237; 596 NW2d 119 (1999). Nothing in the statute indicates that the words of this sentence are not meant to be read together as a single, grammatically linked unit.

 See note 3 of this opinion.

 The trial court’s contrary finding that “there is no evidence that she provided [marihuana paraphernalia] to a registered qualifying patient or registered caregiver” is clearly erroneous because elsewhere in its opinion the trial court refers to evidence that defendant’s husband was a registered caregiver. It is also belied by a letter from the Department of Licensing and Regulatory Affairs, admitted by stipulation of the parties, stating that defendant’s husband was a patient and a caregiver for two other patients.

 While § 4(g) grants immunity for “providing a registered qualifying patient or a registered primary caregiver with marihuana paraphernalia,” immunity does not extend under that provision to other conduct, such as the use of marijuana paraphernalia. Accordingly, even if § 4(g) prohibits the prosecution from relying on defendant’s provision of marihuana paraphernalia to her husband, § 4(g) does not necessarily exclude all references to the paraphernalia if the evidence supports the conclusion that defendant engaged in conduct for which she is not entitled to immunity under § 4(g).

 We deny leave to appeal with respect to defendant’s remaining issue because we are not persuaded that the question presented should be reviewed by this Court.