# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DIONTE DARRYL TRAVIS,

       Defendant-Appellant.

UNPUBLISHED
June 20, 2017

No. 331479
Wayne Circuit Court
LC No. 15-000312-02-FJ

Before: MARKEY, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

In September 2015, a jury convicted defendant of armed robbery, MCL 750.529, but could not reach a verdict on an additional charge of first-degree felony murder, MCL 750.316(1)(b), resulting in a mistrial on that charge. In December 2015, defendant was retried on the felony-murder count, and a jury convicted him of that charge. Defendant, a 17-year-old juvenile at the time of the offense, received sentences of 16 to 40 years' imprisonment for the robbery conviction and 30 to 60 years' imprisonment for the felony-murder conviction. Defendant appeals both of his convictions as of right. We affirm.

Defendant's convictions arise from the robbery and death of Bilal Berreni. Berreni left home during the early morning hours of July 29, 2013. Later that afternoon, his body was discovered outside the old Brewster Projects. The body was not identified to be that of Berreni until March 2014. An investigation led the police to defendant, who was arrested in August 2014. Defendant gave a false name and false date of birth at the time of his arrest. He was questioned and eventually admitted to taking part in the crime.

Defendant's sole claim on appeal is that the trial court erred in denying his motion to suppress his custodial statements. Defendant argues that his custodial statement was given only after an involuntary waiver of his constitutional rights. He does not dispute that he was informed of his rights and that he agreed to waive them, but he asserts that he did not understand them. "Both the state and federal constitutions guarantee that no person shall be compelled to be a witness against himself or herself." *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). "A statement obtained from a defendant during a custodial interrogation is

admissible only if the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003).[1]

A statement is voluntary if the totality of all the surrounding circumstances shows that it is the product of an essentially free and unconstrained choice and not the result of an overborne will. *People v Cipriano,* 431 Mich 315, 333-334; 429 NW2d 781 (1988). Relevant factors in determining voluntariness include the defendant's age, the defendant's education or intelligence level; the extent of the defendant's previous experience with the police, whether the defendant was subjected to repeated and prolonged questioning, whether the defendant was advised of his constitutional rights, whether there was an unnecessary delay in bringing the defendant before a magistrate before he made his statement, whether the defendant was injured, intoxicated, or drugged, or in ill health when he made the statement; whether the defendant was deprived of food, sleep, or medical attention; and whether the defendant was physically abused or threatened with abuse. *Id.* at 334. "The absence or presence of any one of these factors is not necessarily conclusive on the issue of voluntariness," *id.,* and no single factor is determinative, *People v Tierney*, 266 Mich App 687, 708; 703 NW2d 204 (2005). The ultimate test of admissibility is whether the totality of the circumstances indicates that the statement was freely and voluntarily made. *Cipriano*, 431 Mich at 334.

The evidence showed that defendant was 18 years old and of average intelligence at the time of his arrest.[2] Significantly, he had previous experience with the police. In a prior juvenile case, he had been arrested and subjected to custodial interrogation. In that case, after he was advised of his rights he declined to speak, an indication that he understood that he had the right to remain silent.[3]

In this case, defendant was interviewed twice and made the subject inculpatory statements during the second interview. He was initially questioned by Ira Todd, a homicide investigator. Investigator Todd testified that he read defendant his rights from a standard form and had defendant read them as well. Defendant did not ask any questions about his rights and, placed his initials next to each right on the form, indicating that he understood it. He then signed

---

[1] The trial court's ruling on a motion to suppress is reviewed de novo. *People v Roberts*, 292 Mich App 492, 502; 808 NW2d 290 (2011). The trial court's factual findings regarding a motion to suppress are reviewed for clear error. *People v Elliott*, 494 Mich 292, 300; 833 NW2d 284 (2013). "A factual finding is clearly erroneous if it either lacks substantial evidence to sustain it, or if the reviewing court is left with the definite and firm conviction that the trial court made a mistake." *People v Mazur*, 497 Mich 302, 308; 872 NW2d 201 (2015). If resolution of a disputed fact depends on the credibility of the witnesses or the weight of the evidence, this Court will defer to the trial court's determination. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000).

[2] Defendant had dropped out of school in the eleventh grade due to attendance issues, but before dropping out, he had a 2.3 grade point average.

[3] While defendant testified that such was not the case, the trial court found that defendant refused to speak and that finding is supported by the notation on the advice-of-rights form.

the form, indicating that he waived his rights. The interview with Investigator Todd lasted one hour. Defendant testified that Investigator Todd threatened him but did not elaborate, so the record does not support a finding that Investigator Todd's conduct was of such a nature that it could be said to have coerced defendant into waiving his rights or into speaking against his will. Further, defendant also testified that he voluntarily spoke to Investigator Todd because he wanted to explain his side of the story. He told Investigator Todd that he was not involved. Investigator Todd did not believe him and asked Detective Scott Shea and Trooper Lil Drew to talk to defendant.

Detective Shea and Trooper Drew interviewed defendant approximately three hours later. They bought defendant a meal, which he was allowed to eat. Because Investigator Todd had advised defendant of his rights just a few hours earlier, Detective Shea and Trooper Drew did not repeat them. It was not necessary for them to do so because "the failure to reread a defendant's *Miranda* rights prior to each interrogation does not render the subsequent statements inadmissible as evidence against him. Rather, a factual question is raised as to whether the statements were voluntary." *People v Godboldo*, 158 Mich App 603, 607; 405 NW2d 114 (1986). Moreover, Detective Shea did have defendant confirm that he had been advised of, and understood, his rights. Detective Shea and Trooper Drew spoke to defendant for approximately an hour, and defendant admitted his involvement in the crime. Detective Shea then took approximately another hour going over defendant's statement and reducing it to writing.

Defendant testified that he did not want to make any statements and did so because he was "confused," but the trial court did not find this statement credible given that defendant had deliberately tried to conceal his identity, which indicated that he was thinking clearly and making decisions "based on his own self-interest." That finding is supported by the evidence and is not clearly erroneous. Defendant also points out that he is a physically small person,[4] but he does not claim that his size caused him to feel intimidated or that the officers who questioned him actually did anything to make him feel intimidated. Defendant testified that he was not offered a telephone call before he was questioned, but he does not claim that he wanted to make a call or that he asked to do so. Considering the totality of the circumstances, the trial court did not err in determining that defendant's waiver of his rights and subsequent statement were both made voluntarily, knowingly, and intelligently. Therefore, the trial court did not err in denying defendant's motion to suppress.

Affirmed.


/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro

---

[4] At the time of his arrest, defendant was 5'5" and weighed 115 pounds.