# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 15, 2018

v

STEVEN MICHAEL SHIPPEE,

Defendant-Appellant.

No. 338737
Berrien Circuit Court
LC No. 2016-002814-FH

Before: RONYANE KRAUSE, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant, Steven Michael Shippee, pleaded no contest to one count of felonious assault, MCL 750.82(1); and one count of second-degree home invasion, MCL 750.110a(3). The trial court sentenced defendant to concurrent terms of imprisonment of 23 to 48 months for his felonious assault conviction and 60 to 180 months for his home invasion conviction, with credit for 238 days served. Defendant now appeals by delayed leave granted.[1] We affirm defendant's convictions and sentence but remand for the correction of the judgment of sentence.[2]

Defendant's convictions arise out of an incident on July 3, 2016, when a father, his fiancée, and his daughter returned home after watching fireworks in a neighboring town to find defendant inside their home. Defendant was standing just inside the screen door, and when he saw the victims pull into the driveway, he ran out the door and around the side of the house toward a soybean field. The father chased defendant. As the father was catching up to

---

[1] *People v Shippie*, unpublished order of the Court of Appeals, entered July 25, 2017 (Docket No. 338737) (granting leave limited to the issues raised in the application).

[2] The judgment of sentence incorrectly indicates that the trial court sentenced defendant to 23 *days* to 48 months' imprisonment for his felonious assault conviction. The judgment of sentence should state that defendant's minimum sentence for felonious assault was 23 *months*. Accordingly, we remand to the trial court for the ministerial task of correcting the judgment of sentence. See MCR 6.435(A); *People v Katt*, 248 Mich App 282, 311-312; 639 NW2d 815 (2001).

defendant, defendant stopped in the tall grass separating the backyard of the house from the soybean field. The two men stood about one and a half to two feet apart and exchanged words.

At that time, the fiancée came around the side of the house and asked the father if she should call the police. He replied that she should. When the father looked back at defendant, defendant was pointing a gun at him, instructing him to tell his fiancée not to call the police. The father could see just the top part of the gun, and the gun was pointed in the direction of his stomach. He could not tell the exact make and model of the gun, but he knew it was black and about six to seven inches long, and he told an officer the night of the incident that he thought the gun had a squared-off barrel and looked like the officer's duty weapon. He saw the gun in one of defendant's hands, a bottle in the other, and smelled liquor on defendant. The father turned to tell his fiancée to call the police anyway. When he turned back, defendant had disappeared into the soybean field. The victims searched through the house to see if anything was missing or damaged. They found hunting gloves that were not there before and that a box in the closet had been rummaged through. It did not appear that anything had been taken.

That night, officers went to defendant's house where he lived with his parents. Defendant's father told officers that he owned a handgun that he kept in a gun safe. When defendant's father went to the gun safe to show the officers the handgun, he found that the safe was already open and that his nine-millimeter Glock was missing. Defendant admitted to one officer that he had the combination to the gun safe written down on a piece of paper in his wallet, and defendant's father confirmed that defendant had the correct combination. Officers searched the area for over an hour but never found the missing Glock.

The following morning, one of the victims, the father, followed the path that defendant had taken through the fields the night before. He found a gun and a knife about four feet down in a drainage ditch in a pond between his house and defendant's. He alerted the police and showed them where he found the weapons. The police later determined that the gun in the ditch was a BB gun.

Defendant pleaded no contest to felonious assault and second-degree home invasion as part of a plea bargain in which in exchange for defendant's plea, the prosecution reduced the charge of first-degree home invasion to second-degree home invasion, dismissed six other charges, and dismissed the habitual offender notice. Defendant pleaded no contest because he was intoxicated and did not have sufficient memory of the events of that night. To provide the factual basis for the no contest plea, the parties stipulated to the facts on the probable cause sheet, which specified that the gun pointed at the victim was a nine-millimeter Glock.

On appeal, defendant challenges the trial court's scoring of offense variables (OV) 1, 2, 4, and 12. When reviewing a challenge under the sentencing guidelines, "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A factual finding is clearly erroneous if it either lacks substantial evidence to sustain it, or if the reviewing court is left with the definite and firm conviction that the trial court made a mistake." *People v Mazur*, 497 Mich 302, 308; 872 NW2d 201 (2015). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

Defendant's arguments against the trial court's scoring of OVs 1, 2, and 12 all primarily rest on the claim that the trial court erred in finding that defendant pointed a Glock handgun at the father; defendant claimed at sentencing and again claims on appeal that the weapon used was actually a BB gun. Defendant, however, stipulated to using the information from the probable cause sheet as the factual basis for his no contest plea. The trial court then read the contents of the probable cause sheet into the record to ensure that the parties agreed to the factual basis and its accuracy. That factual basis included a stipulation that the "black handgun" used was a "9 millimeter Glock." The trial court explicitly stated that it scored OVs 1, 2, and 12 on the basis of the stipulated fact that the weapon used was a Glock, not a BB gun as defendant later claimed. Facts the parties stipulate to bind the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 385; 741 NW2d 61 (2007). Therefore, the trial court did not clearly err in relying on stipulated facts and finding that the weapon that defendant pointed at the father was a Glock, not a BB gun.

Defendant first challenges the trial court's scoring of OV 1, aggravated use of a weapon. MCL 777.31(1)(c), defining OV 1, instructs the trial court to assign 15 points if "[a] firearm was pointed at or toward a victim . . ." Based on the stipulated facts, defendant "pull[ed] a black handgun from his person and point[ed] it at [the father] from a close distance." Therefore, because the trial court found that the weapon was a firearm and that defendant pointed the firearm at the father, the trial court had sufficient evidence to assess 15 points for OV 1. *Id.*

Next, defendant objects to the trial court's scoring of OV 2, lethal potential of a weapon possessed or used. MCL 777.32(1)(d), outlining OV 2, instructs the trial court to assign 5 points if "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon[.]" Again, based on the stipulated facts, defendant possessed a nine-millimeter Glock (pistol), which he pointed at one of the victims. Therefore, the trial court did not err in assessing five points for OV 2. *Id.*; *Hardy*, 494 Mich at 438.

Defendant also challenges the trial court's scoring of OV 12, contemporaneous felonious criminal acts. MCL 777.42(1)(b) and (c), delineating OV 12, instruct the trial court to assign 10 points if "[t]wo contemporaneous felonious criminal acts involving crimes against a person were committed," *or* if "[t]hree or more contemporaneous felonious criminal acts involving other crimes were committed[.]" The statute further specifies in MCL 777.42(2)(a)(*i*) and (*ii*):

> (a) A felonious criminal act is contemporaneous if both of the following circumstances exist:
>
> (*i*) The act occurred within 24 hours of the sentencing offense.
>
> (*ii*) The act has not and will not result in a separate conviction.

Defendant argues that OV 12 was incorrectly scored because defendant's two crimes against a person, home invasion and felonious assault, both resulted in convictions. Additionally, defendant argues that OV 12 excludes consideration of violations of MCL 750.227b, carrying or possessing a firearm or pneumatic gun when committing or attempting to commit a felony, which defendant claims would be the only other contemporaneous felonious criminal act defendant committed. See MCL 777.42(2)(b).

-3-

Defendant's argument ignores the fact that after hearing testimony at the preliminary examination, the magistrate found sufficient evidence to bind over defendant on eight separate counts, including the following three: Count 3 - carrying a concealed weapon, MCL 750.227; Count 4 - carrying a dangerous weapon with unlawful intent, MCL 750.226; and Count 5 - possession of a firearm by a felon, MCL 750.224f. The prosecution dismissed the above charges as part of the plea agreement, so the charges have not and will not result in a conviction. Although the magistrate was operating under a probable cause standard, the trial court had sufficient evidence before it to also find by a preponderance of the evidence that defendant committed the above contemporaneous felonious criminal acts. See *Hardy*, 494 Mich at 438.

In regard to the carrying a concealed weapon charge, the father testified that when he was chasing defendant around the side of the house he did not see a gun and that only when his fiancée asked about calling the police did he see defendant pull out the gun. Examining the charge of carrying a dangerous weapon with unlawful intent, defendant stipulated to the fact that he was carrying a Glock, and as noted by the magistrate at the preliminary examination, the trial court could infer that defendant would not break into a house armed with a pistol if he did not have the intent to use it if caught or in his escape. Lastly, in looking at the charge for possession of a firearm by a felon, the PSIR stated that defendant had one prior felony conviction for third-degree home invasion,[3] and there was no evidence that defendant had met any of the requirements to restore his eligibility to possess a firearm. Additionally, the trial court had evidence that defendant also committed felonious assault against the fiancée because she was also present when defendant drew the gun, and she was included in defendant's threat. Therefore, the trial court did clearly err in finding that defendant had committed at least three contemporaneous felonious criminal acts and did not err in assessing 10 points for OV 12. See MCL 777.42(1)(c); *Mazur*, 497 Mich at 308; *Hardy*, 494 Mich at 438.

Finally, defendant objects to the trial court's scoring of OV 4, psychological injury to a victim, based on a different challenge to the trial court's factual findings. MCL 777.34(1)(a), describing OV 4, instructs the trial court to assign 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim." The same statute mandates that the trial court "[s]core 10 points if the serious psychological injury *may* require professional treatment" and notes that "the fact that treatment has not been sought is not conclusive." MCL 777.34(2) (emphasis added). "The Court of Appeals has held that OV 4 may properly be scored at 10 points even absent proof that a victim sought or received, or intended to seek or receive, professional treatment." *People v Calloway*, 500 Mich 180, 188 n 22; 895 NW2d 165 (2017).

Defendant argues that there was no evidence that the father suffered psychological injury, and, therefore, the trial court erred in assigning 10 points to OV 4; however, defendant's

---

[3] The PSIR is presumed to be accurate unless the defendant raises an effective challenge to the accuracy of its factual information. *People v Althoff*, 280 Mich App 524, 541; 760 NW2d 764 (2008), citing *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993). Therefore, the trial court may properly utilize the unchallenged content of the PSIR to score the sentencing guidelines. *Id*. Defendant did not challenge his criminal history in the PSIR.

argument fails for two reasons. First, the father was not the only victim: his fiancée and his daughter were also present during the home invasion and assault. And, second, there was evidence on the record that the victims did suffer psychological injury.

The father testified that he was only one and a half to two feet away from defendant when defendant pointed a gun at him, and his fiancée was only about 25 yards behind him. When they looked through their house after defendant had left, they found that defendant had rifled through a box in their closet. The responding officer testified at defendant's preliminary examination that when he arrived at the house, the victims were "visibly shaken up." The fiancée addressed the trial court at sentencing, stating that she felt that defendant had "terrorized [the] neighborhood" and that she "worr[ied] about [her] neighborhood." When asked whether any of the victims had missed work, she stated that they had and also said that they would be moving soon, hoping that the incident would "be behind [them]."

This Court has found that OV 4 was properly assessed 10 points when the victim "felt angry, hurt, violated, and frightened after the crime," *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012), and when the victim "had tried to block out memory" of the crime, *People v Waclawski*, 286 Mich App 634, 681; 780 NW2d 321 (2009). Therefore, the trial court did not err in finding that the victims had suffered severe psychological injury based on the violative nature of defendant's crimes, evidence that the victims were frightened, and testimony that they were planning to move in hopes of getting past the trauma of the incident. See *Mazur*, 497 Mich at 308; *Williams*, 298 Mich App at 124; *Waclawski*, 286 Mich App at 681. Thus, the trial court also did not err in assessing 10 points to OV 4.

The trial court did not clearly err in its factual findings supporting its scoring of OVs 1, 2, 4, and 12, nor did it err in its application of the facts to the law. *Hardy*, 494 Mich at 438.

We affirm but remand to the trial court for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Michael J. Riordan