*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BLAKE'S FARM, INC,

        Petitioner-Appellant,

v

ARMADA TOWNSHIP,

        Respondent-Appellee.

FOR PUBLICATION
May 15, 2025
11:24 AM

Nos. 371397; 371398
Tax Tribunal
LC Nos. 23-002935; 23-002942

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

In these consolidated appeals involving a tax-exemption dispute,[1] petitioner, Blake's Farm, Inc, appeals as of right the final opinions and judgments of the Michigan Tax Tribunal determining that, for the 2023 and 2024 tax years, two parcels of real property owned by Blake's Farm were only entitled to a partial Qualified Agricultural Exemption (QAE) under § 7ee of the General Property Tax Act, MCL 211.1 *et seq*. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Blake's Farm owns two parcels of property in Armada Township that are classified as agricultural and contain an apple orchard. In addition, Blake's Farm operates a farm market, a year-round restaurant, and a gift shop; hosts seasonal events throughout the year; stores equipment, packs and cans apples for sale, and stores cider for sale. Indeed, Blake's Farm identifies itself as "one of the top agricultural tourist destinations in southeast Michigan." Numerous buildings and structures have been constructed on the parcels, including the year-round restaurant, the gift shop, a cider-retail area, equipment storage buildings, cold storage, a building for canning/packing apples, a distribution and cider storage barn, a "snack bar," a banquet area and event space, a

---

[1] See *Blake's Farm, Inc v Armada Twp*, unpublished order of the Court of Appeals, entered June 26, 2024 (Docket No. 371397).

seasonal ice rink, a pavilion, a sizable parking lot, free-standing public restrooms, a business office, and a residential house with an attached garage.

For the 2023 tax year, respondent's tax assessor determined that one parcel was entitled to a partial QAE of 25% and that the second parcel was entitled to a partial QAE of 54%. Blake's Farm objected and requested that both parcels receive a 100% QAE. Blake's Farm contended that its "retail operations, parking lots and agritourism activities" were all "agricultural activities" under the Michigan Right to Farm Act, MCL 286.471 *set seq.*, and that, as a result, even though the "activities" appeared to be "commercial" they were part of "farm operations" under the Generally Accepted Agricultural and Management Practices (GAAMPs) that had been promulgated by the Michigan Department of Agriculture & Rural Development. Respondent's March Board of Review, however, denied the request after determining that, under MCL 211.7dd(d), "commercial/industrial" buildings and structures cannot receive a QAE of 100%.

Blake's Farm appealed to the Michigan Tax Tribunal, arguing that "[a]ll of the operations, including the retail operations, parking lots and agritourism activities—are all agricultural activities." In its answer, respondent argued that a QAE was not permissible for the value of Blake's Farm's industrial and commercial operations and parking lots that were being used for "commercial purposes." Respondent submitted as evidence multiple aerial photographs depicting the various buildings and structures on the parcels, diagrams of several of the buildings, other documents indicating the value of the various buildings and structures, and the calculations used by its assessor to determine what portion of each parcel qualified for a QAE and what portion did not.

In response, Blake's Farm did not submit any evidence regarding the use of the buildings and structures, nor did it challenge respondent's assessor's calculation as to the value of the buildings and structures. Instead, it contended that although its "retail operations and parking lots" may seem commercial in nature, they were actually "agricultural activities" under the RTFA. It added that the allegedly commercial activities were "farm operations" under the relevant GAAMPs, and it submitted both a copy of the 2021 GAAMP for farm markets as well as a letter from the Michigan Department of Agriculture & Rural Development stating that, on July 16, 2020, Blake's Farm's "farm operation" was in compliance with all applicable GAAMPs. Following a hearing, the MTT held that one parcel was entitled to a QAE of 25.3% and that the other was entitled to a QAE of 54% for the 2023 and 2024 tax years. This appeal follows.

## II. TAX EXEMPTIONS

## A. STANDARD OF REVIEW

Blake's Farm argues that the MTT erred by upholding the assessor's determination that it was only entitled to a partial QAE on each parcel. In the absence of fraud, our review of decisions of the MTT is limited to determining whether the tribunal made an error of law or adopted a wrong principle. *President Inn Properties, LLC v City of Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011). The MTT's factual findings are final if they are supported by competent and substantial evidence. *Id.* "Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Id.* at 642. Further, it is "any evidence that reasonable minds would accept as sufficient to support the decision." *Detroit Lions,*

*Inc v City of Dearborn*, 302 Mich App 676, 691; 840 NW2d 168 (2013). This case also involves questions of statutory interpretation, which we review de novo. See *Wexford Medical Group v City of Cadillac*, 474 Mich 192, 202; 713 NW2d 734 (2006).

## B. ANALYSIS

"Proper construction of a statute 'begins by reviewing the text of the statute at issue; if the language is unambiguous, it is presumed that the Legislature intended the meaning plainly expressed, and judicial construction of the statute is not permitted.' " *President Inn Properties*, 291 Mich App at 632, quoting *Paris Meadows, LLC v Kentwood*, 287 Mich App 136, 141; 783 NW2d 133 (2010). We may not read anything "into a clear statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *President Inn Properties*, 291 Mich App at 632 (quotation marks and citation omitted). Although tax exemptions should "be narrowly or strictly construed in favor of the government," a "strained construction that is contrary to the Legislature's intent" is not permitted. *SBC Health Midwest, Inc v City of Kentwood*, 500 Mich 65, 71; 894 NW2d 535 (2017) (quotation marks and citation omitted).

Blake's Farm sought a QAE under MCL 211.7ee(1), which is a tax exemption from certain local-school-operating taxes. Specifically, MCL 211.7ee(2) provides that "[q]ualified agricultural property that is classified as agricultural under [MCL 211.34c] is exempt[.]" Blake's Farm asserts:

> MCL 211.7ee(2) provides that agricultural property which is classified as such under MCL 211.34(c) [sic] is exempt as "qualified agricultural property." Thus, the statutes provide that the entire parcel, if classified as "agricultural real property," qualifies for an exemption as "qualified agricultural property."

In doing so, Blake's Farm seems to suggest that it is entitled to a 100% QAE under § 7ee(2) so long as its parcels qualify as "agricultural" under MCL 211.34c. However, MCL 211.34c requires that the property (1) be qualified agricultural property, and (2) that it be classified as agricultural under MCL 211.34c. Thus, merely being classified as agricultural does not warrant a 100% QAE.

Respondent conceded that both parcels were classified as agricultural under MCL 211.34c. Despite that concession, Blake's Farm argues extensively on appeal that its parcels are classified as agricultural under MCL 211.34c. Under MCL 211.34c, "agricultural real property includes parcels used partially or wholly for agricultural operations, with or without buildings." An "agricultural operation" includes "[p]erforming any practices on a farm incident to, or in conjunction with, farming operations," but "[a] commercial storage, processing, distribution, marketing, or shipping operation is not part of agricultural operations." MCL 211.34c(2)(a)(*ii*)(G).

Blake's Farm notes that the phrase "farming operations" is not defined by the GPTA. It contends that this Court should, therefore, adopt the definition of "farm operations" as set forth in the RTFA. Specifically, MCL 286.472(b) provides:

> *As used in this act*:
>
> "Farm operation" means the operation and management of a farm or a condition or activity that occurs at any time as necessary on a farm in connection with the commercial production, harvesting, and storage of farm products, and

-3-

includes, but is not limited to . . . [m]arketing produce at roadside stands or farm markets.  [Emphasis added.]

Blake's Farm contends that, using the definition of "farm operation" from the RTFA, its operation of its farm market—which apparently includes its gift shop, seasonal and year-round event spaces, free-standing bathrooms, parking lots, snack bar, storage buildings, processing and distribution buildings, and business office—is an agricultural operation under MCL 211.34c(2)(a)(*ii*)(G) and that it is consequently entitled to a 100% QAE for both parcels.  We disagree.  By its express language the definition of "farm operation" in MCL 286.472 is limited to that term as it is used in the RTFA.

Blake's Farm nevertheless contends that, by refusing to apply the definition of "farm operation" set forth in the RTFA, the MTT created a conflict between the GPTA and the RTFA. Generally, when statutes conflict, the more specific provision governs over the more general provision.  *Milne v Robinson*, 513 Mich 1, 13; 6 NW3d 40 (2024).  However, Blake's Farm asserts that if the statutes are read *in pari materia*, then the statutes can be harmonized.  We again disagree. Under the doctrine of *pari materia*, "statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law." *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015).  Although both the RTFA and § 7ee of the GPTA refer to agricultural real property, the similarities are at best superficial.  The subject matter of § 7ee is whether real property is exempt from certain taxes.  In contrast, the purpose of the RTFA is primarily intended to protect farm and farm operations from nuisance lawsuits and to exempt qualifying farms and farm operations from local ordinances, rules, and regulations that conflict with the RTFA.  See *Scholma v Ottawa Co Rd Com'm*, 303 Mich App 12, 22-23; 840 NW2d 186 (2013).  The RTFA is devoid of language indicating that it also intended to provide tax exemptions to farms and farm operations.  Therefore, although both the RTFA and § 7ee of the GPTA refer to agriculture, it cannot be said that they relate to the same subject or share a common purpose. Accordingly, we decline to read the statutes *in pari materia*.

Although we agree with the MTT that the RTFA has no applicability to the instant matter, it is undisputed that the parcels at issue are classified as agricultural under MCL 211.34c.  As a result, resolution of this appeal turns on whether the parcels are qualified agricultural property as that term is defined in MCL 211.7dd(d).

"Qualified agricultural property" is defined by MCL 211.7dd(d) as "unoccupied property and related buildings classified as agricultural, or other unoccupied property and related buildings located on that property devoted primarily to agricultural use as defined in section 36101 of the natural resources and environmental protection act, 1994 PA 451, MCL 324.36101."  The term "agricultural use" is defined in MCL 324.36101(b) as:

> the production of plants and animals useful to humans, including forages and sod crops; grains, feed crops, and field crops; dairy and dairy products; poultry and poultry products; livestock, including breeding and grazing of cattle, swine, captive cervidae, and similar animals; berries; herbs; flowers; seeds; grasses; nursery stock; fruits; vegetables; maple syrup production; Christmas trees; and other similar uses and activities.  Agricultural use includes use in a federal acreage set-aside program

or a federal conservation reserve program. Agricultural use does not include the management and harvesting of a woodlot.

Furthermore, as used in MCL 211.7dd(d), "[r]elated buildings include a residence occupied by a person employed in or actively involved in the agricultural use and who has not claimed a principal residence exemption on other property."

Expressly excluded from the definition of "qualified agricultural property" is "[p]roperty used for commercial storage, commercial processing, commercial distribution, commercial marketing, or commercial shipping operations or other commercial or industrial purposes . . . ." MCL 211.7dd(d).[2] An owner is not eligible for a QAE for the "portion of the total state equalized valuation of the property that is used for a commercial or industrial purpose or that is a residence that is not a related building." MCL 211.7dd(d).

The MTT found that the various buildings and structures on the two parcels of land owned by Blake's Farm were being used for a "commercial or industrial purpose." Blake's Farm acknowledges that it is operating an agricultural tourism business on its parcels, but contends that even though it is engaged in what clearly are commercial operations the retail operations are nevertheless agricultural in nature. As noted above, it reaches this conclusion by relying on the definition of "agricultural real property" set forth in MCL 211.34c and the definition of "farm operation" set forth by the RTFA. Because the RTFA's definitions are not applicable to the interpretation of the GPTA, however, we find that argument to be without merit.

Instead, we turn to the evidence presented to the MTT. As noted above, respondent submitted various photographs, diagrams, and valuation calculations to the MTT. Based upon that evidence, it is clear that some of the buildings were clearly intended for commercial purposes. Specifically, the restaurant, gift shop, snack bar, and cider retail area all had commercial purposes. Moreover, the evidence submitted also showed that Blake's Farm had created a number of event spaces, including a banquet area, a pavilion, and a seasonable ice rink. The event spaces—and buildings devoted to selling food, cider, and other products—were supported by the parking lots and free-standing restrooms. After all, without the event spaces and commercial buildings, there would be no need to maintain free-standing restrooms and large parking lots. Moreover, evidence that there were various storage buildings, cold storage, distribution barns, and areas to can and pack apples are suggestive of industrial purposes. Finally, it is reasonable to infer from the evidence presented that the business office was used—at least in part—to operate Blake's Farm's extensive agritourism operation.

---

[2] In its reply brief, Blake's Farm points out that under MCL 211.27a(11)(c), " 'commercial purpose' means used in connection with any business or other undertaking intended for profit . . . ." Blake's Farm argues that, given that the operation of a farm is generally a for-profit endeavor, a strict interpretation of the statute would mean that all farm operations are excluded from the definition of qualified agricultural property. However, MCL 211.27a(11)(c) expressly limits its definitions to "this section." As a result, that definition has no applicability to the definition of qualified agricultural property in MCL 211.7dd(d).

Blake's Farm did not submit any evidence indicating that the buildings and structures identified by respondent were not used for commercial or industrial purposes. Instead, they relied solely upon their argument that, applying the definitions from the RTFA, their entire agricultural tourism operation—which included a gift shop, a year-round restaurant, and numerous event spaces—was an agricultural use. Thus, respondent's evidence regarding the existence of the various buildings and structures, as well as the uses that could be inferred from the evidence, was unrebutted in the proceedings before the MTT. And even though Blake's Farm now contends that certain buildings and structures are not for commercial or industrial purposes, the basis for that argument is that the use of each building and structure is a permissible farm operation under the RTFA and its associated GAAMPs. Again, however, its reliance upon the RTFA is misplaced.

In sum, based upon the evidence presented, the MTT's finding that only parts of the parcels were qualified agricultural property entitled to a QAE was supported by competent, material, and substantial evidence. Moreover, in doing so, the MTT did not misapply the law or adopt a wrong principle by applying the definitions set forth in the GPTA and not relying upon the definitions in the RTFA.[3]

Affirmed. Respondent may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman

---

[3] Although Blake's Farm argues that it was entitled to a 100% QAE as opposed to a percentage QAE, it does not base that argument upon specific evidence presented to the MTT showing that the calculations used by respondent's assessor were incorrect. Rather, it argues that *all* of the property was qualified agricultural property. Because no specific arguments have been raised on appeal as to the validity of respondent's calculations, we offer no opinion as to whether the percentages were properly calculated.