*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONALD JOSEPH KOSHMIDER II,

        Defendant-Appellant.

UNPUBLISHED
February 7, 2019

No. 340124
Wexford Circuit Court
LC No. 2016-011749-FH

Before: SERVITTO, P.J., and STEPHENS and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of delivery/manufacture of marijuana, MCL 333.7401(2)(d)(iii); two counts of aiding and abetting the delivery/manufacture of marijuana, MCL 333.7401(2)(d)(iii) & MCL 767.39; two counts of maintaining a drug house, MCL 333.7405(1)(d) and MCL 333.7406; and, one count of possession of marijuana, MCL 333.7403(2)(d). The trial court sentenced defendant, as an habitual fourth offender (MCL 769.12), to concurrent prison terms of 13-180 months on each conviction except the possession of marijuana conviction, for which it sentenced defendant to three days. We affirm.

Defendant owned and operated Best Cadillac Provisions, a medical marijuana dispensary located in Wexford County. The Traverse Narcotics Team (TNT) began investigating defendant in 2014 for failing to comply with state drug laws. In 2016, TNT initiated several controlled buys of marijuana from Best Cadillac Provisions using confidential informants for whom defendant was not a registered primary caregiver under the Michigan Medical Marijuana Act (MMMA), MCL 333.26421 *et seq.*, marked money, and surveillance teams. After three successful controlled buys (one in April 2016 and two in June 2016), police executed search warrants at Best Cadillac Provisions and at defendant's home. From Best Cadillac Provisions, police seized several items, including a digital scale, two cell phones, and a briefcase containing suspected marijuana and marijuana oil. Police seized ammunition, police scanners, a backpack containing marijuana edibles, marijuana, and 27 marijuana plants found in two rooms located in defendant's basement, among other things, from defendant's home.

Prior to trial, defendant moved to dismiss the charges against him based upon the immunity from prosecution and defense to the charges under the MMMA. The trial court found that defendant was not entitled to the protections afforded under the MMMA because he was not in compliance with the MMMA and was further precluded from presenting evidence in support of a defense under the MMMA at trial.

Defendant's first claims of error on appeal concern the trial court's ruling with respect to application of the MMMA. Defendant asserts that for four of his charges (two counts of maintaining a drug house, one count of possession of marijuana at his home on July 11, 2016, and one count of possession of marijuana with intent to deliver on July 11, 2016) the trial court was required to determine whether the amount he possessed was in excess of that allowed under the MMMA, since defendant possessed a valid medical marijuana card and the trial court erred in failing to make this determination. Defendant also claims that the trial court abused its discretion in ordering a blanket prohibition against the admission of MMMA evidence. Defendant contends that these errors rise to the level of constitutional deprivations. We disagree.

The trial court's legal determinations under the MMMA are reviewed de novo on appeal. *People v Hartwick*, 498 Mich 192, 201; 870 NW2d 37 (2015). Whether an error is constitutional in nature is an issue of law, which we also review de novo on appeal. *People v Kaslowski*, 239 Mich App 320, 323; 608 NW2d 539 (2000). Preserved evidentiary rulings are reviewed for an abuse of discretion. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). An evidentiary error rises to the level of a constitutional due process violation if the error "so infect[s] the trial with unfairness" as to deny the defendant of the right to a fair trial. *People v Blackmon*, 280 Mich App 253, 270; 761 NW2d 172 (2008).

"The possession, manufacture, and delivery of marijuana are punishable criminal offenses under Michigan law." *Hartwick*, 498 Mich at 209. Section 4 of the MMMA (MCL 333.26424), however, grants broad immunity from criminal prosecution and civil penalties to "qualifying patients" and "primary caregivers." Because the actions defendant was charged with occurred prior to the December 20, 2016, amendment of the MMMA, the version of the statute in effect at the time of defendant's actions is used. Former subsection (a) specifically grants immunity to qualifying patients and states:

> (a) A qualifying patient who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including, but not limited to, civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount. The privilege from arrest under this subsection applies only if the qualifying patient presents both his or her registry identification card and a valid driver license or government-issued

identification card that bears a photographic image of the qualifying patient. [MCL 333.26424]

A registered qualifying patient engaged in the medical use of marijuana, therefore, may possess up to 2.5 ounces of usable marijuana and up to 12 marijuana plants, kept in an enclosed, locked facility, unless that patient specified a primary caregiver during the state registration process. *Hartwick*, 498 Mich at 211.

Former subsection (b) similarly provides immunity to registered primary caregivers. It states:

> (b) A primary caregiver who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act. The privilege from arrest under this subsection applies only if the primary caregiver presents both his or her registry identification card and a valid driver license or government-issued identification card that bears a photographic image of the primary caregiver. This subsection applies only if the primary caregiver possesses marihuana in forms and amounts that do not exceed:
>
> (1) 2.5 ounces of usable marihuana for each qualifying patient to whom he or she is connected through the department's registration process; and
>
> (2) for each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility; and
>
> (3) any incidental amount of seeds, stalks, and unusable roots.[MCL 333.26242]

Thus, a primary caregiver may possess up to 2.5 ounces of usable marijuana and 12 marijuana plants in an enclosed, locked facility "for each registered qualifying patient who has specified the primary caregiver during the state registration process." "[T]his section only applies if the primary caregiver is assisting a qualifying patient with the medical use of marijuana." *Hartwick*, 498 Mich at 212.

"Medical use of marihuana" means:

> the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition. [MCL 333.26423(f)]

MCL 333.26424 further provides:

> (e) There is a presumption that a qualifying patient or primary caregiver is engaged in the medical use of marihuana in accordance with this act if the qualifying patient or primary caregiver complies with both of the following:
>
> (1) Is in possession of a registry identification card.
>
> (2) Is in possession of an amount of marihuana that does not exceed the amount allowed under this act. The presumption may be rebutted by evidence that conduct related to marihuana was not for the purpose of alleviating the qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition, in accordance with this act.

Former MCL 333.26424 provides for two additional types of immunity, not limited to registered qualifying patients and/or registered primary caregivers:

> (i) A person shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, solely for being in the presence or vicinity of the medical use of marihuana in accordance with this act, or for assisting a registered qualifying patient with using or administering marihuana.

Under the above, a person may claim immunity for being "solely" in the presence or vicinity of the medical use of marijuana or "solely" for assisting a registered qualifying patient with using or administering medical marijuana. As to the first immunity provision in § 4(i), "a person is only entitled to immunity when the underlying medical use of marijuana is in accordance with the MMMA." *People v Mazur*, 497 Mich 302, 310–11; 872 NW2d 201 (2015). The *Mazur* court noted that it had previously addressed the second immunity provision in § (4)(i) in *Michigan v McQueen*, 493 Mich 135,158; 828 NW2d 644 (2013):

> Notably, § 4(i) does not contain the statutory term "medical use," but instead contains two of the nine activities that encompass medical use: "using" and "administering" marijuana . . . . In this context, the terms "using" and "administering" are *limited to conduct involving the actual ingestion of marijuana.* Thus, by its plain language, § 4(i) permits, for example, the spouse of a registered qualifying patient to assist the patient in ingesting marijuana, regardless of the spouse's status. [*Mazur*, 497 Mich at 311-312]

"Because the second type of immunity available under § 4(i) refers generically to 'using and administering' marijuana and not to the statutorily defined 'medical use' of marijuana, this Court read § 4(i) narrowly in *McQueen*. Because the defendants in *McQueen* were engaged in the transfer, delivery, and acquisition of marijuana—activities that are found under the umbrella of

'medical use'—but were not engaged in the mere use and administration of marijuana, this Court found that they were not entitled to immunity under § 4(i)." *Id*. at 312.

Defendant is correct that the trial court must resolve factual disputes relating to § 4 immunity. Specifically, "to determine whether a defendant is entitled to the § 4 grant of immunity, the trial court must make factual determinations, including whether the defendant has a valid registry identification card and whether he or she complied with the volume, storage, and medical use limitations." *Hartwick*, 498 Mich at 213–14. The trial court did not make a factual determination with respect to whether the marijuana found in the basement, in fact, belonged to defendant. Nevertheless, a trial court's ruling may be upheld where the right result was reached, even if for a different reason. *Gleason v Michigan Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). The trial court reached the right result here.

According to *Hartwick*, 498 Mich at 217-218:

A defendant may claim entitlement to immunity for any or all charged offenses. Once a claim of immunity is made, the trial court must conduct an evidentiary hearing to factually determine whether, for each claim of immunity, the defendant has proved each element required for immunity. These elements consist of whether, at the time of the charged offense, the defendant:

(1) was issued and possessed a valid registry identification card,

(2) complied with the requisite volume limitations of § 4(a) and § 4(b),

(3) stored any marijuana plants in an enclosed, locked facility, and

(4) was engaged in the medical use of marijuana.

An evidentiary hearing concerning whether defendant was entitled to the protections of the MMMA was held on May 26, 2017. Defendant was the only witness who testified at the hearing. Defendant testified that he has a valid medical marijuana card that was also valid in July 2016. Defendant testified that when the police executed the search warrant at Best Cadillac Provisions on July 11, 2016, he was present and had a locked briefcase with him containing approximately 1 ½ ounces of medical marijuana, as well as several (3-4) grams of marijuana concentrate. Defendant admitted that he owned Best Cadillac Provisions for the express purpose of providing medical marijuana to medical marijuana patients, and that he allowed employees to distribute the medical marijuana that he provided to Best Cadillac Provisions for him from that location as well. Defendant testified that he kept the marijuana for Best Cadillac Provisions in a locked briefcase, and admitted that the only marijuana at Best Cadillac Provisions on July 11, 2016, was that contained in the locked briefcase, and that it was intended for his personal use and for sale that day at Best Cadillac Provisions. Defendant testified that he is his own medical marijuana caregiver.

Defendant further testified that the marijuana plants found at his home during the execution of a search warrant on July 11, 2016, were not his plants. He testified that the plants belonged to Kris and Rose Swaffer, who were caregivers that paid him in cash each month for the use of his basement. Defendant testified that he did not have access to the basement rooms

where the marijuana plants were found, but that he did have access to the open areas of the basement. Defendant additionally testified that he had "medibles" (marijuana edibles), inside a backpack in the office of his home that the police seized on July 11, 2016, that were for his personal use, and that marijuana butter from his refrigerator was also seized. He testified that he did not carry the medibles or concentrate to Best Cadillac Provisions because, according to defendant, most people only wanted marijuana flowers.

Testimony and evidence at trial established that three confidential informants made controlled buys of marijuana at Best Cadillac Provisions on three different days in 2016. All three informants testified that they had no primary medical marijuana caregiver at Best Cadillac Provisions. Testimony and evidence also established at trial that defendant leased two rooms in his basement to the Swaffers for them to grow marijuana to provide to medical marijuana patients, and that both rooms were padlocked. However, there was no key to one of the padlocks, so a single screw held the hardware to the padlock in place and a screwdriver used to remove the screw and gain access to the room was placed on a table near the door in the basement.

"Enclosed, locked facility" means "a closet, room, or other comparable, stationary, and fully enclosed area equipped with secured locks or other functioning security devices that permit access only by a registered primary caregiver or registered qualifying patient." MCL 333.26423(d). The room secured by a single screw was not an "enclosed, locked, facility" as statutorily defined, as it was not equipped with a secured lock or other functioning security device that permitted access only to a registered primary caregiver or registered qualifying patient. Thus, the marijuana in the room that was accessible to defendant could be attributable to him and he would not be entitled to § 4 immunity for the possession of it because the storage of the marijuana did not comply with the MMMA.

Moreover, for both the possession of marijuana and possession of marijuana with intent to deliver charges, defendant admitted that he possessed marijuana concentrate and marijuana edibles (in the form of hard candy and fudge) at his home on July 11, 2016. He further testified that he did not keep these products at Best Cadillac Provisions because most people wanted only the flowers of the marijuana plant, thereby indicating that he did, in fact, sell or distribute the edibles, but not on a regular basis. Under the version of the MMMA in effect on July 11, 2016, the possession of edible products containing anything but the dried leaves and flowers of the marijuana plant by a qualifying patient did not meet the requirements for § 4 immunity.

In *People v Carruthers*, 301 Mich App 590, 611; 837 NW2d 16 (2013), a panel of this Court interpreted the meaning of the phrase "usable marijuana" for purposes of the limitation on possession of the same under MCL 333.26423. Noting that THC extract has a higher potency than the dried leaves and flowers of the marijuana plant, the *Carruthers* Court explicitly stated:

> Our interpretation also does not preclude the medical use of marijuana by ingestion of edible products; to the contrary, that use is authorized by the MMMA, within the statutory limitations, provided that the edible product is a "mixture or preparation" of "the dried leaves and flowers of the marihuana plant," rather than of the more potent THC that is extracted from marijuana resin. MCL 333.26423(k). Again, we find that judgment of the drafters of the MMMA, in so

defining "usable marihuana," to be an appropriate exercise of their duty to define the parameters of the legal use of marijuana for medical purposes. [*Id*. at 607].

Moreover, the definition of "usable marijuana" in MCL 333.26424 was amended, effective December 2016 to read:

(c) For purposes of determining usable marihuana equivalency, the following shall be considered equivalent to 1 ounce of usable marihuana:

(1) 16 ounces of marihuana-infused product if in a solid form.

(2) 7 grams of marihuana-infused product if in a gaseous form.

(3) 36 fluid ounces of marihuana-infused product if in a liquid form.

Marijuana infused products are now included within the definition of "usable marijuana," then, when they had previously not. The Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws or amending statutes. *GMAC LLC v Treasury Dept*, 286 Mich App 365, 372; 781 NW2d 310 (2009). The Legislature is also presumed to act with knowledge of judicial statutory interpretations and, "when a judicial decision is released and the Legislature acts to change the language of the statute, it is strong evidence of the disapproval of the judicial interpretation." *Id*. at 372-373.

The trial court was not required to find a specific amount of marijuana possessed by defendant for purposes of his possession and possession with intent to deliver charges, as his possession of any amount of the edibles failed to qualify him for § 4 immunity. While the amended version of the MMMA does not prohibit the possession or use of concentrates or edibles, the MMMA does not apply retroactively and only has prospective effect. See, *People v Kolanek*, 491 Mich 382, 406; 817 NW2d 528 (2012).

With respect to defendant's charge of maintaining a drug house at Best Cadillac Provisions, the charge of maintaining a drug house prohibits one from (1) keeping or maintaining a house or building that is frequented by persons using controlled substances for the purpose of using controlled substances or (2) keeping or maintaining a house or building that is used for keeping or selling controlled substances. See MCL 333.7405(1)(d). Defendant admitted at the evidentiary hearing that he owned and ran Best Cadillac Provisions for the specific purpose of providing marijuana to medical marijuana patients and that he sold marijuana, which he provided, to medical marijuana patients from the location. He further testified that he was not the primary caregiver for anyone. Thus, defendant kept or maintained the Best Cadillac Provisions building for the purpose of selling controlled substances in violation of MCL 333.7405(1)(d).

Immunity is only allowed under § 4 of the MMMA to: (1) a registered qualifying patient engaged in the medical use of marijuana who possesses up to 2.5 ounces of usable marijuana and up to 12 marijuana plants, kept in an enclosed, locked facility (*Hartwick*, 498 Mich at 211); (2) a primary caregiver possessing up to 2.5 ounces of usable marijuana and 12 marijuana plants in an enclosed, locked facility "for each registered qualifying patient who has specified the primary

caregiver during the state registration process" and if the primary caregiver is assisting a qualifying patient with the medical use of marijuana (*Hartick*, 498 Mich at 212); (3) one who is "solely" in the presence or vicinity of the medical use of marijuana, providing that the underlying medical use of marijuana is in accordance with the MMMA (*Mazur*, 497 Mich at 310–11), and; (4) one who is "solely" assisting a registered qualifying patient with using or administering medical marijuana, so long as the assistance is specifically for the *use* or *administration* of medical marijuana, not the transfer, delivery, and acquisition of marijuana (*Mazur*, 497 Mich at 312).

Defendant was not entitled to immunity for selling any marijuana under (1) above because he could only possess marijuana for his personal use as a qualifying patient and he testified that the marijuana he had at Best Cadillac Provisions when the warrant was executed there was for both personal use and for sale at Best Cadillac Provisions. Defendant was also not entitled to immunity under (2) above because a primary caregiver must be specified during the state registration process in order to be tied to a qualifying patient and thus, in order for the primary caregiver to be able to possess marijuana for a qualifying patient under the MMMA. Defendant admitted he was not a primary caregiver to anyone, let alone those that purchased marijuana from Best Cadillac Provisions; nor were his employees.

Defendant was also not entitled to immunity under (3) above because he was not "solely" in the presence of the medical use of marijuana, as he admitted that he procured and sold the marijuana, and he was not entitled to immunity under (4) above because any assistance to a registered qualified patient must be limited to the use or administration of the marijuana, which our Supreme Court has determined is conduct involving only the actual ingestion of marijuana. *McQueen*, 493 Mich at 158. While the sale of medical marijuana is included within the definition of "medical use" of marijuana, *McQueen*, 493 Mich at 152, "the transfer, delivery, and acquisition of marijuana are three activities that are part of the "medical use" of marijuana that the drafters of the MMMA chose *not* to include as protected activities within § 4(i)." *Id*. at 158. Because defendant's sale of marijuana at Best Cadillac Provisions does not constitute assistance with "using" or "administering" marijuana, defendant cannot lay claim to immunity under this provision of the MMMA, regardless of how much he kept, had, or sold at Best Cadillac Provisions.

Finally, regarding defendant's claim that a specific amount of marijuana had to be found by the trial court with respect to his maintaining a drug house charge at his home address, defendant's possession of marijuana edibles and concentrate were not allowed under the MMMA when defendant possessed them, and defendant essentially admitted that the same were for sale. He is, therefore, not entitled to immunity with respect to that charge.

Defendant was also not entitled to assert an affirmative defense under § 8 of the MMMA (MCL 333.26428). That section provides:

(a) Except as provided in section 7(b), a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

"Accordingly, under MCL 333.26428(a), "a *patient* and a *patient's primary caregiver,* if any," may assert the medical purpose for using marijuana as an affirmative defense in a marijuana-related prosecution." *People v Bylsma*, 315 Mich App 363, 379; 889 NW2d 729 (2016) (emphasis in original). In sum, there is

[N]o basis for concluding that a defendant may assert a § 8 defense in a prosecution for conduct by which he possessed, cultivated, manufactured, delivered, sold, or transferred marijuana to an individual who serves as a primary caregiver for other patients or to a patient whom he did not serve as a *primary* caregiver. Stated differently, a defendant may not raise a § 8 defense in a prosecution for patient-to-patient transactions involving marijuana, caregiver-to-caregiver transactions involving marijuana, transactions that do not involve a patient for whom the defendant serves as a primary caregiver, and transactions involving marijuana that do not involve the defendant's own primary caregiver, as "patient" and "primary caregiver" are defined and expressly limited under the act. Only conduct directly arising from the traditional patient and primary-caregiver relationship is subject to an affirmative defense under § 8. [*Id*. at 384]

Because none of defendant's charged conduct arose from the accepted patient and primary-caregiver relationship, he was not entitled to assert a defense under § 8.

Defendant next asserts that the trial court abused its discretion in prohibiting the admission of MMMA evidence for any and all purposes at trial. This argument misinterprets and broadens the ruling actually made by the trial court.

The prosecution brought a motion in limine seeking to preclude evidence at trial concerning whether the employees of Best Cadillac Provisions who had made sales of marijuana in the controlled buys possessed valid medical marijuana cards. The prosecution argued that because defendant was not a caregiver and the trial court already ruled that he could not take advantage of Section 8 of the MMMA as a defense or Section 4 for immunity, this evidence was irrelevant. The trial court addressed the prosecution's motion in limine on the first day of trial. During discussions on the motion, defense counsel acknowledged that he could not bring a Section 8 defense, but contended that, whether the employees (who would be testifying) and defendant had their medical marijuana cards was relevant to whether defendant aided and abetted them, given that one could not aid or abet something that is legal. The trial court agreed with the prosecution and we find no abuse in discretion on this issue.

Under MRE 402, all relevant evidence is generally admissible. However, MRE 402 provides that relevant evidence may nevertheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Relevant" evidence is defined as that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Because the MMMA's immunity provision clearly contemplates that a registered qualifying patient's medical use of marijuana only occur for the purpose of alleviating *his own* debilitating medical condition or symptoms associated with his debilitating medical condition, and not *another patient's* condition or symptoms, § 4 does not authorize a registered qualifying patient to transfer marijuana to another registered qualifying patient." *McQueen*, 493 Mich at 141. Because defendant was not entitled to the protections of the MMMA, and his employees testified that they were not registered caregivers to anyone and that they sold marijuana to people from Best Cadillac Provisions, whether defendant or his employees possessed a valid medical marijuana patient card was irrelevant.[1]

Defendant next asserts that the trial court erred in failing to instruct the jury as to what "keep and maintain" meant for purposes of the charges of maintaining a drug house and, alternatively, that defendant's counsel was ineffective for not knowing the law concerning maintaining a drug house and failing to request additional instruction that would bolster the defense. We disagree.

Defendant did not object to the jury instruction regarding maintaining a drug house, nor did he request a *Ginther*[2] hearing or new trial based on ineffective assistance of counsel. We review unpreserved claims of instructional error for plain error affecting substantial rights.

---

[1] Despite the trial court's ruling, the trial was replete with testimony concerning the MMMA. In fact, at one point during trial, defendant admitted that he was not a caregiver but that he was still "allowed to possess 12—" indicating to the jury that he, perhaps, had a medical marijuana patient card.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017). This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record. *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014) (quotation marks and citation omitted). Jury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence. *Everett*, 318 Mich App at 527. "Even if somewhat imperfect, instructions do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights." *People v Bartlett*, 231 Mich App 139, 143–44; 585 NW2d 341 (1998). When reviewing a claim that the jury was improperly instructed, we will not reverse a verdict or order a new trial unless, after reviewing the record, it appears to this Court that the error resulted in a miscarriage of justice, which occurs when an erroneous or omitted instruction pertained to a basic and controlling issue in the case. *Id*. at 144.

On defendant's charges of maintaining a drug house, the trial court instructed the jury as follows:

> To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First that the defendant knowingly kept or maintained, as to count 4, a building, and as to count 5, a dwelling; second, [th]at this building and/or dwelling was frequented by persons for the purposes of illegally using controlled substances, or used for illegally keeping controlled substances, or used for illegally selling of controlled substances; third, that the defendant knew that the building and or dwelling was frequented or used for such illegal purposes.

This instruction accurately set forth the elements of maintaining a drug house. And, there is no error in a trial court's failure to instruct the jury on the definition of "keep or maintain" or on the requirement of continuous use with respect to a charge of maintaining a drug house when the jury would have convicted the defendant on the basis of the evidence at trial. *People v Norfleet*, 317 Mich App 649, 658; 897 NW2d 195 (2016). That is the case here.

Defendant testified at trial that he used and paid rent for the building at Best Cadillac Provisions in order to sell medical marijuana out of the building. Because the trial court determined that defendant was not entitled to the protections afforded by the MMMA, defendant's testimony, by itself, was sufficient to establish that he knowingly kept the building for keeping or selling controlled substances in violation of MCL 333.7405. This is so even if the jury had been instructed, as defendant now asserts it should have been, that "keep or maintain"

-11-

under the maintaining a drug house charge required that the controlled substance use be both continuous and a substantial purpose for which the building was used.[3]

Defendant also testified that he had marijuana edibles in a backpack seized from his home and that he did not take them to Best Cadillac Provisions because people purchasing from there only wanted the marijuana flowers. Defendant did not testify that all of the items in the backpack were for personal use; only that he was storing them at his home. Further evidence was produced showing that at least one of the two rooms in his basement was not "locked" but was instead, easily accessed through the removal of a single screw, and that a quantity of marijuana leaves, stems and clippings were in the open area of his basement, completely accessible to him. Defendant also testified that he brought the marijuana to Best Cadillac Provisions for it to be sold there on an almost daily basis, allowing for an inference that the marijuana was kept at his home and then transported to Best Cadillac Provisions as needed. Again, this evidence was sufficient to establish that defendant knowingly kept his house for the purpose of using controlled substances or for keeping or selling controlled substances illegally, in violation of MCL 333.7405(1)(d), even if the jury had been instructed as defendants contends was required.

Further, counsel was not ineffective for failing to request the instruction, because the direct and circumstantial evidence clearly established defendant's guilt. The phrase "keep or maintain" implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence. *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007). There were repeated controlled buys at Best Cadillac Provisions and circumstantial evidence that defendant knowingly kept controlled substances at his home for purposes of supplying Best Cadillac Provisions, and kept illegal marijuana edibles at his home for personal use and/or for sale. Given the evidence at trial, counsel is not ineffective for failing to advance a meritless argument or raise a futile objection concerning the properly given jury instructions. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next asserts that the prosecution failed to produce legally sufficient evidence to convict him of the two charges of aiding and abetting the delivery/manufacture of marijuana. Issues relating to the sufficiency of the evidence are reviewed de novo. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007).

This Court has described the three elements necessary for a conviction under an aiding and abetting theory: " '(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement.' " *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006), quoting *People v Moore*, 470 Mich 56, 67–68; 679 NW2d 41 (2004). In this case, the first element is controlled by MCL 333.7401 since the crime charged was that of delivery/manufacture of a controlled substance. That statute provides, in relevant part:

---

[3] Pursuant to *People v Thompson*, 477 Mich 146, 156–157; 730 NW2d 708 (2007).

(1) [e]xcept as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form . . . .

(2) A person who violates this section as to:

\*\*\*

(d) Marihuana, a mixture containing marihuana, or a substance listed in section 7212(1)(d) is guilty of a felony punishable as follows:

\*\*\*

(iii) If the amount is less than 5 kilograms or fewer than 20 plants, by imprisonment for not more than 4 years or a fine of not more than $20,000.00, or both.

In one count of aiding and abetting, it was alleged that defendant aided and abetted his employee, Jason Hunt, in the delivery/manufacture of marijuana. Hunt testified at trial that he helped defendant operate Best Cadillac Provisions, and further admitted to helping dispense medical marijuana to patients from that location. Specific to the instant matter, Hunt testified that he sold marijuana to an identified informant on April 21, 2016, at Best Cadillac Provisions. The informant testified that he made controlled buy of marijuana from "Jason" at Best Cadillac Provisions on that date and that neither Jason nor anyone else at Best Cadillac Provisions was his designated primary caregiver. In the second count of aiding and abetting, it was alleged that defendant aided and abetted his employee, Michael Holloway, in the delivery/manufacture of marijuana. Holloway testified at trial that he sold marijuana to an identified informant on June 9, 2016 while working at Best Cadillac Provisions. The informant testified that at trial that he frequented Best Cadillac Provisions and made a controlled buy there on June 9, 2016, from "Mike." The informant testified that he had a valid medical marijuana card at the time, but had no designated caregiver.

As previously stated, "[t]he possession, manufacture, and delivery of marijuana are punishable criminal offenses under Michigan law." *Hartwick*, 498 Mich at 209. Section 4 of the MMMA (MCL 333.26424) grants broad immunity from criminal prosecution and civil penalties to "qualifying patients" and "primary caregivers." MCL 333.26424(b) specifically provides immunity to registered primary caregivers who assist "a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act." Hunt and Holloway admittedly not being the purchasing informants' primary caregivers, they were not immune from prosecution for their sales of marijuana[4] and their actions in doing selling the marijuana were crimes under Michigan law.

---

[4] To the extent such a sale could be deemed "assistance" from a primary caregiver to a qualifying patient with "the medical use of marijuana" under the MMMA.

As to the second element necessary to convict a defendant of aiding and abetting, that defendant performed acts or gave encouragement that assisted in the commission of a crime, sufficient evidence was introduced that defendant assisted Hunt and Holloway in their illegal sales of marijuana to the informants. Defendant testified at trial that he maintained and operated Best Cadillac Provisions with the express purpose of selling medical marijuana, that he intended to distribute medical marijuana, that he brought the marijuana sold at Beast Cadillac Provisions to that building himself, that he personally sold marijuana from Best Cadillac Provisions, that he is not anyone's primary caregiver, and that he permitted Hunt and Holloway to distribute marijuana from Best Cadillac Provisions. Defendant testified that he employed Holloway and Hunt at Best Cadillac Provisions as "volunteers with compensation"[5] to distribute medical marijuana. Hunt testified that no marijuana was kept on-site overnight at Best Cadillac Provisions and that defendant supplied the needed marijuana daily to the business. Hunt further testified that at times he would call defendant to bring marijuana to Best Cadillac Provisions, and defendant would arrive with the requested marijuana within 20-30 minutes. Element two is thus satisfied.

The final element necessary to establish a defendant's guilt of aiding and abetting is that the "defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *Robinson*, 475 Mich at 6. This element is established though defendant's testimony that he intended to distribute medical marijuana and that he actually sold marijuana from Best Cadillac Provisions and his testimony that he had Holloway and Hunt sell marijuana from Best Cadillac Provisions for him.

In sum, sufficient evidence was presented at trial showing that Hunt and Holloway each committed the crime of delivery/manufacture of marijuana, that defendant performed acts or gave encouragement that assisted in the commission of those crimes, and that defendant intended the delivery/manufacture of marijuana or had knowledge that Hunt and Holloway intended to commit these crimes at the time defendant gave aid and encouragement. Defendant is thus not entitled to a new trial on the charges of aiding and abetting the delivery/manufacture of marijuana.

In a Standard 4 brief[6] defendant presents several additional arguments on appeal, none of which merit relief. First, defendant claims that the prosecution engaged in misconduct by introducing "other acts evidence" which impermissibly prejudiced him before the jury. Defendant claims he was entitled to a mistrial based on this misconduct. However, the challenged evidence was a good-faith effort to admit evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). That is especially true here where the trial court's order explicitly permitted the admission of the challenged evidence. To the extent that defendant challenges the admission of the "other acts evidence" under MRE

---

[5] Testimony at trial established that Hunt and Holloway were compensated for their services at Best Cadillac Provisions in the form of marijuana.

[6] Admin. Ord. No. 2004-6.

404(b) in this case as an evidentiary error, the record shows that the parties stipulated to the admission of the 404(b) evidence. "A party cannot stipulate a matter and then argue on appeal that the resultant action was error." *Holmes v Holmes*, 281 Mich App 575, 588; 760 NW2d 300 (2008), quoting *Chapdelaine v Sochocki*, 247 Mich App 167, 177; 635 NW2d 339 (2001).

Next defendant asserts that the prosecution withheld exculpatory evidence. Defendant does not, however, identify or explain what evidence the prosecution allegedly withheld. "It is not sufficient for a party 'simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.'" *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (Citation omitted). We thus consider this issue abandoned on appeal.

Finally, defendant states that he was denied access to the courts when he was transferred to a Michigan Department of Corrections facility with no access to a law library containing a computer necessary to effectively perform research to write his Standard 4 brief. It appears that defendant is attempting to raise a constitutional issue. "This Court disfavors consideration of unpreserved claims of error, even unpreserved claims of constitutional error." *People v Cain*, 498 Mich 108, 115; 869 NW2d 829 (2015) (Citations omitted). Appellate courts may grant relief for unpreserved errors if the proponent of the error can satisfy the "plain error" standard set forth in *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999). This test has four prongs: the defendant must establish that "(1) an error occurred, (2) the error was "plain"—i.e., clear or obvious, and (3) the error affected substantial rights—i.e., the outcome of the lower court proceedings was affected" and (4) "relief is warranted only when the court determines that the plain, forfeited error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of the judicial proceedings." *Cain*, 498 Mich 116 (citations and quotation marks omitted). Defendant has not established any of the *Carines* prongs.

> It is clearly established beyond a reasonable doubt that prisoners and incarcerated defendants have a constitutional right of access to the courts. Further, the United States Supreme Court has established that, in the absence of other forms of adequate legal assistance, this right of access to the courts requires providing prisoners with adequate assistance from persons trained in the law *or* adequate law libraries to assist prisoners in the filing of legal papers. [*People v Mack*, 190 Mich App 7, 20; 475 NW2d 830 (1991)]

Defendant was represented by counsel at trial and on appeal. Therefore, the state was under no constitutional obligation to provide defendant with access to a law library. *People v Yeoman*, 218 Mich App 406, 415; 554 NW2d 577 (1996). It is the mere offering of competent legal assistance that satisfies the Sixth and Fourteenth Amendments. *Mack*, 190 Mich App at 24. Thus, there was no constitutional violation and, accordingly, no plain error.

We affirm.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Mark T. Boonstra